# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Hoffman v. Orland Firefighters' Pension Board*, 2012 IL App (1st) 112120

| | |
|---|---|
| Appellate Court Caption | ERIC HOFFMAN, Plaintiff-Appellee, v. ORLAND FIREFIGHTERS' PENSION BOARD; ORLAND FIREFIGHTERS' PENSION FUND; MEMBERS OF THE ORLAND FIREFIGHTERS' PENSION BOARD (George Shick, President; Nicholas Anastos, Secretary; Salvatore Cacciato, Trustee; Glenn Michalek, Trustee; Robert Mitchell, Trustee; Bryant Krizik, Fire Chief); and ORLAND FIRE PROTECTION DISTRICT, Defendants-Appellants. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-2120 |
| Filed | November 21, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The termination of the work-related pension awarded to plaintiff firefighter in 2002 following a hearing held by defendant Pension Board in 2010 to determine whether plaintiff should continue to receive the pension was against the manifest weight of the evidence, regardless of the testimony of the Board's physician that plaintiff was never disabled, since evidence that plaintiff did not suffer a disabling injury did not amount to proof of recovery as mandated by the Pension Code and plaintiff's treating physician testified that plaintiff could not perform the duties of a firefighter. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-28719; the Hon. Sophia Hall, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Cary J. Collins, of Collins & Radja, of Hoffman Estates, for appellants.

Thomas W. Duda, of Law Offices of Thomas W. Duda, of Arlington Heights, for appellee.

Panel

JUSTICE GARCIA delivered the judgment of the court, with opinion.
Justice Hall concurred in the judgment and opinion.
Justice Gordon dissented in part, with opinion.

**OPINION**

¶ 1    The Orland Firefighter's Pension Board (the Board) terminated the work-related disability pension of plaintiff Eric Hoffman, a decision the circuit court reversed. The plaintiff was awarded a disability pension by the Board in 2002 by a three to two vote, following a 2001 injury he sustained while performing his firefighter duties. In 2010, the Board held a hearing to examine whether the plaintiff should continue to receive his disability pension. The plaintiff's personal physician testified that the plaintiff remained physically incapable of performing the full duties of a firefighter. The Board's doctor, based on his examination of the plaintiff and his review of the available medical records dating back to the plaintiff's original injury in 2001, testified that the plaintiff had no objective manifestations of a physical disability and that his only ailment was a subjective claim of pain. The Board's doctor opined that the plaintiff was never rendered disabled by his 2001 injury. The Board terminated the plaintiff's pension. The circuit court reversed, ruling that the only evidence supporting the termination was that the plaintiff never sustained a disability, which rendered the Board's decision against the manifest weight of the evidence because no proof was presented that the plaintiff had recovered from his disability. We agree with the circuit court and affirm.

¶ 2                                    BACKGROUND

¶ 3    The plaintiff became a member of the Orland Fire Protection District, and the Orland Firefighters' Pension Fund, on March 30, 1992. On March 6, 2001, he injured his back loading a 360-pound patient on a stretcher into an ambulance. Dr. Terrence Moisan, the retained physician of the fire protection district, examined the plaintiff. On March 7, 2001, Dr. Moisan ordered an X-ray and MRI of the plaintiff's back. The results of the MRI were "normal" and "negative for any disc herniation or degenerative disc change." Dr. Moisan prescribed physical therapy and referred the plaintiff to Dr. Richard Beaty, an orthopedic surgeon. Dr. Beaty also prescribed physical therapy and referred the plaintiff to a pain specialist, Dr. Scott Glaser, who administered epidural injections. The plaintiff continued under Dr. Beaty's care on a semiregular basis, with continued physical therapy. In May 2002,

Dr. Beaty determined the plaintiff's progress had "plateaued."

¶ 4    On January 8, 2002, the plaintiff applied for duty-related disability benefits from the pension fund. On January 9, 2002, the plaintiff underwent a functional capacity examination. The examination revealed that he could not perform the duties of a firefighter; a four-week conditioning program was recommended. After the plaintiff completed the conditioning program, Dr. Beaty advised the plaintiff to undergo a second functional capacity examination. He did so on June 12, 2002. The result of the second examination was that the plaintiff could meet the demands of his job. Dr. Beaty, however, recommended that the plaintiff return to work only under restrictions against bending or twisting.

¶ 5    A duty-related pension hearing was held over several days in May and July 2002. As provided by statute, the plaintiff was examined prior to the hearing by three physicians selected by the Board: Dr. Rajeev Khanna, Dr. Brian Svazas, and Dr. William Earman.

¶ 6    Dr. Khanna's report stated that he did not "anticipate any permanent disability" and estimated that the plaintiff could return to work in four to six weeks. He opined that the plaintiff's weight gain contributed to his back pain. The ordered X-ray disclosed "no evidence of osteoarthritis or degenerative disc disease."

¶ 7    In his report, Dr. Svazas noted that the MRI showed no sign of disc bulge or herniation. He reported that the plaintiff did not comply with the home exercise program his physical therapist prescribed. Dr. Svazas opined that the plaintiff suffered from a muscoloskeletal issue, caused mostly by his weight gain. He did not believe the plaintiff was "permanently disabled from fire service"; he felt the plaintiff was "capable of returning to fire fighting duties." He recommended a course of physical therapy.

¶ 8    Dr. Earman testified before the Board that the plaintiff was "suffering from a chronic low back pain condition" based on his review of the MRI records, which revealed no abnormality. Dr. Earman did not identify a physical cause of the pain because the plaintiff's records did not "indicate an etiological cause for his back discomfort." His ultimate opinion, however, was that the plaintiff was not able to perform the duties of a firefighter based on the January 9, 2002 functional capacity evaluation and therefore was permanently disabled.

¶ 9    On July 31, 2002, the majority of the five-member Board voted to award the plaintiff a duty-related disability pension.

¶ 10   Thereafter, pursuant to statute, the Board periodically requested the plaintiff undergo an independent medical examination to determine whether he should continue to receive pension benefits. On July 29, 2005, Dr. John Stamelos performed an examination of the plaintiff, which revealed no objective findings to corroborate the plaintiff's complaints of back pain. Dr. Stamelos prescribed a functional capacity examination for the plaintiff. The plaintiff's personal physician, Dr. Beaty, advised the plaintiff that he could undergo the functional capacity exam, but he should do so without exerting himself beyond the limits of his pain. Dr. Stamelos opined that such a limitation would render the examination useless; no functional capacity exam was performed. Ultimately, Dr. Stamelos concluded that the plaintiff was unable to perform his duties as a firefighter "because of the restrictions placed on him by his treating physician." He stated, "At this time, it is my opinion that Mr. Hoffman is permanently disabled from firefighter service because of continued pain and discomfort

-3-

regarding his lower back, SI joint, as well as his issues regarding his shoulder." The plaintiff retained his disability pension.

¶ 11 In 2009, the Board requested the plaintiff undergo a medical examination by Dr. Martin Lanoff, as the Board-selected physician. Upon examination of the plaintiff and review of his medical records dating back to the injury to his back in 2001, Dr. Lanoff found no objective basis for the plaintiff's complaints of back pain. He could identify no "medical pathology" to corroborate the pain. He wrote, "[The] physical examination findings have always been negative from an objective standpoint and all imaging tests have been negative (and they have been quite extensive) since the very beginning." He characterized the diagnosis assigned to the plaintiff as one of pain, "which is not a diagnosis, it is a complaint."

¶ 12 Dr. Lanoff completed the Board's "Physician's Certification of Continuance of Disability" form. To the question of whether the patient continued to be disabled to the point he was unable to perform his duties, Dr. Lanoff checked "No." The form requested an explanation of "the nature of the member's current injury/illness that prohibits him or her from performing his or hr [*sic*] duties as a firefighter and/or officer." Dr. Lanoff wrote, "No disability."

¶ 13 On January 27, 2010, the Board began a hearing on the plaintiff's possible restoration to service. Counsel for the plaintiff objected to the introduction of Dr. Lanoff's report as hearsay, in Dr. Lanoff's absence. Dr. Lanoff was unavailable to testify by phone.

¶ 14 At the continued hearing on February 15, 2010, Dr. Beaty testified that he was the plaintiff's long-term treating doctor and was very familiar with the plaintiff's condition. He opined that returning the plaintiff to work under his current physical condition would put him in danger as well as his coworkers.

¶ 15 On February 22, 2010, Dr. Lanoff's testimony was taken by phone. The plaintiff also testified. Dr. Lanoff testified to the contents of his written evaluation. He restated his opinion that the plaintiff was not disabled. The following question and answer took place during Dr. Lanoff's cross-examination.

"Q. *** [J]ust to summarize the general thrust of your report–it's your contention that Mr. Hoffman was never disabled[?]

A. Correct. I don't see any physical pathology. I see multiple and consistent, yet persistent, subjective complaints. Yet everybody's workups are negative. Nobody even gives him much of a diagnosis."

¶ 16 On June 9, 2010, the Board issued its decision and order terminating the plaintiff's duty-related disability pension, because "Eric Hoffman had recovered from the back injury from which he was granted a disability." The Board explained its decision: "The reports and testimony from Dr. Lanoff as well as medical reports from the original hearing granting the disability all note that the subjective complaints of Eric Hoffman are out of proportion to the objective findings." The plaintiff challenged the Board's decision in the circuit court. After reviewing the parties' briefs and hearing oral arguments, the circuit court reversed the Board's decision as against the manifest weight of the evidence. The Board timely appeals.

¶ 17                                    ANALYSIS

¶ 18        We review the decision of an administrative agency, not that of the circuit court. *Bertucci v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 351 Ill. App. 3d 368, 370 (2004). An appellate court should not " 'reweigh evidence or *** make an independent determination of the facts.' " *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010) (quoting *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 463 (2009)). Under the applicable manifest weight of the evidence standard, we reverse an agency's factual determinations only if the opposite conclusion is clearly evident. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). "However, an administrative agency's conclusions of law *** are reviewed *de novo*." *Bertucci*, 351 Ill. App. 3d at 370. Questions concerning statutory construction are issues of law. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510 (2007).

¶ 19        The Board argues that satisfactory evidence was before it to justify terminating the plaintiff's pension as provided by the Illinois Pension Code (the Code) (40 ILCS 5/1-101 *et seq.* (West 2008)). The plaintiff asserts the Code is clear that a disability pension may only be terminated "[u]pon satisfactory proof to the board that a firefighter on the disability pension has *recovered* from disability." (Emphasis added.) 40 ILCS 5/4-112 (West 2008). According to the plaintiff, the Board's evidence, at best, showed that he was never disabled, as Dr. Lanoff concluded, which rendered the Board's decision of June 9, 2010, a reversal of its original 2002 decision that the plaintiff was disabled when he was awarded a duty-disability pension. The plaintiff argues, consistent with the circuit court's ruling, that the termination of pension benefits is against the manifest weight of the evidence as no evidence was presented to the Board during the February 2010 hearings that the plaintiff *recovered* from the disability the Board found in 2002.

¶ 20        The Board's contention in this case lends itself to analysis as a question of law and as a question of fact. The legal question is whether the Code grants authority to the Board to terminate pension benefits on a finding that the defendant was not disabled when he was awarded pension benefits. The factual question is whether the Board's termination decision, grounded on Dr. Lanoff's conclusion that the plaintiff was never disabled, is against the manifest weight of the evidence. Because the Board claims it properly terminated the plaintiff's disability pension premised on Dr. Lanoff's testimony that the plaintiff was never disabled, we begin with whether the Code empowers the Board to terminate pension benefits in the context of a "continuance of disability" hearing based on a medical finding that the firefighter was never disabled. See 40 ILCS 5/4-112 (West 2008).


¶ 21                                  Question of Law

¶ 22        The Code provides that any firefighter injured in the line of duty, which renders the firefighter "physically or mentally permanently disabled for service in the fire department," entitles the firefighter to a disability pension. 40 ILCS 5/4-110 (West 2008). The disability that triggers a pension award must be "established by the board by examinations of the firefighter *** by 3 physicians selected by the board and such other evidence as the board

deems necessary." 40 ILCS 5/4-112 (West 2008). Once a disability pension is awarded, an annual medical examination is performed "prior to attainment of age 50 *** to verify continuance of disability." *Id.* "Upon satisfactory proof to the board that a firefighter on the disability pension has recovered from disability, the board shall terminate the disability pension." *Id.* The Board may not terminate a disability pension "except in compliance with the statutory requirements." *O'Brien v. Board of Trustees of the Firemen's Fund*, 64 Ill. App. 3d 592, 595 (1978).

¶ 23    Both parties cite the *O'Brien* decision. Without substantive discussion, the Board does so in the negative: "*O'Brien* does not apply to this case." The plaintiff quotes extensively from *O'Brien* to support his contention that "the Pension Fund erred in terminating [his] disability benefits." We find *O'Brien* guides our decision here.

¶ 24    In *O'Brien*, a firefighter was awarded a line-of-duty disability pension by the Board of Trustees of the Firemen's Pension Fund of the City of East St. Louis (the City Board), when he presented with " 'ulnar neuropathy,' " a condition manifested by a loss of sensation in the hands. *Id.* at 593. According to one examining physician, the condition would permit the firefighter "to perform light duties." *Id.* The City Board passed a motion reinstating the firefighter to active duty "with the provision that the job made available to him be one he could perform." *Id.* The firefighter did not accept the reinstatement, which prompted the City Board to hold a full hearing on whether the firefighter should continue to receive a disability pension. *Id.* Following the hearing, "the [City] Board found that he could perform light duties and entered an order *** removing O'Brien from the pension rolls." *Id.* at 593-94. O'Brien appealed.

¶ 25    The Fifth District, in a majority opinion, concluded the issue before it was "whether the [City] Board, having once granted a disability pension, can properly terminate that pension if it subsequently decides that the fireman can perform an available job with the department involving lighter duties than fighting fires, although the fireman's original disability had not changed in any way." *Id.* at 595. The City Board had "stipulated that O'Brien had not recuperated and that his neurological disability had not changed in any way." *Id.* at 594. Relying on express language in the Code, the court noted the City Board could terminate a pension only " '[u]pon satisfactory proof *** that a fireman *** *has recovered from his disability*.' " (Emphasis in original.) *Id.* at 595 (quoting Ill. Rev. Stat. 1973, ch. 108½, ¶ 4-112 (now 40 ILCS 5/4-112 (West 2008))). The court ruled, "[T]here must be some evidence of recovery from the disability to justify the pension's termination." *Id.* at 596. The majority grounded its ruling on the Code's express language: "The statutory language unequivocally sets forth the requirement that a fireman recover from his disabling illness *** before the [City] Board can terminate the pension and reinstate the fireman into active service." *Id.* at 595. Ultimately, the court reversed the City Board, concluding there was "no evidence [the firefighter recovered from his disability] to support the revocation of O'Brien's disability pension pursuant to section 4-112 of the Illinois Pension Code." *Id.* at 596.

¶ 26    As *O'Brien* made clear, the Code expressly provides a process to determine whether a firefighter is fit to be restored to service. "Medical examination of a firefighter receiving a disability pension shall be made at least once each year *** in order to verify continuance of disability." 40 ILCS 5/4-112 (West 2008). The Code bars examinations to verify

-6-

continuance of disability "after age 50." *Id.* Before a pension may be terminated, the Board must have before it "satisfactory proof" that a pensioner "has recovered from disability." *Id.*

¶ 27    A medical examination of the plaintiff by Dr. Lanoff was ordered by the Board in 2009 to address whether the plaintiff remained disabled. The Board scheduled a "continuance of disability" hearing in February 2010 at which Dr. Lanoff's testimony and report were presented. However, Dr. Lanoff's report never addressed whether the plaintiff had "recovered from disability" as mandated by the Code. *Id.* The closest the report came to discussing the plaintiff's improvement from his disability was Dr. Lanoff's answer to one of the questions the Board's attorney asked the report to address: " '4. Whether this individual's medical condition will improve.' " Dr. Lanoff answered, "There is no condition to improve." Nor did Dr. Lanoff, in either direct or cross-examination, provide testimony that the plaintiff "has recovered from disability." In fact, when Dr. Lanoff was asked whether the "thrust of [his] report *** [was] that Mr. Hoffman was never disabled," Dr. Lanoff answered, "Correct."

¶ 28    While the Board makes no explicit claim that the Code permits it to terminate the plaintiff's disability pension based on a medical report that concludes the plaintiff was never disabled, its decision and order permit no other conclusion. According to the Board's decision, "the medical reports from the original hearing [in 2002] granting the disability all note the subjective complaints of Eric Hoffman are out of proportion to the objective findings." The Board reasoned: "[There was no] objective medical reason for his disability; therefore Plaintiff has 'recovered' from his disability." The Board restated its reasoning in relation to Dr. Lanoff's report: "[The] report[ ] demonstrates that the Plaintiff has recovered from any previous disability by [Dr. Lanoff's] indication in his report that the Plaintiff had 'no disability.' " The Board's choice of language also bears contrasting with the language of the Code. The Board claims in its decision that "Hoffman *had* recovered from the back injury from which he was granted a disability." (Emphasis added.) The Code speaks in terms of "*has* recovered from disability." (Emphasis added.) 40 ILCS 5/4-112 (West 2008). Use of the past tense "had" by the Board leaves it uncertain when recovery occurred; use of the present tense "has" in the Code denotes that a firefighter's disability improved since the firefighter was first awarded a pension or since the pensioner's last "continuance of disability" hearing. *O'Brien*, 64 Ill. App. 3d at 595 (the Code requires "a fireman recover from his disabling illness *** before the Board can terminate the pension").

¶ 29    The Code authorizes a pension board to request a pensioner undergo a medical examination to determine whether the firefighter is physically capable of returning to active service. The purpose of the medical examination, which is permitted annually, is to either "verify continuance of disability" or provide "satisfactory proof" that the pensioner has "recovered from disability." 40 ILCS 5/4-112 (West 2008). No provision of the Code permits a pension board to revisit and reverse its original decision, made years earlier but never appealed, that a firefighter was rendered disabled by a line-of-duty injury. *Cf. Godare v. Sterling Steel Casting Co.*, 103 Ill. App. 3d 46, 51 (1981) (*res judicata* can apply to administrative determinations in a proper case).

¶ 30    Nor does the Code authorize a board to conclude that a pensioner has *recovered* from the disabling injury based solely on medical evidence that the firefighter was never actually disabled. The Board's position in this case would render pointless the Code's requirement

of "satisfactory proof" and render meaningless the phrase "recovered from disability," if the Board may terminate pension benefits based on an assessment that the pensioner was "never disabled," as Dr. Lanoff testified. The Board improperly equates Dr. Lanoff's report and testimony regarding the absence of medical reasons for the plaintiff's disability with "satisfactory proof *** that [the plaintiff] *** has recovered from his disability," as the Code mandates. 40 ILCS 5/4-112 (West 2008). We are presented with no authority under the Code that the nonexistence of medical evidence showing a disability, based on the testimony and report of the Board's expert, is tantamount to satisfactory proof of recovery. Ultimately, the Board feigns adherence to the Code while giving no substance to the Code's requirement that evidence be presented that the plaintiff "has recovered from disability" to terminate the pension the Board awarded in 2002.

¶ 31    As a matter of law, the Code does not authorize the Board's implicit contention that it may revisit its initial decision to award the plaintiff a disability pension based on medical evidence at a continuance of disability hearing, held years later, that the plaintiff was never disabled. The Code does not authorize a board to terminate a pension, once given, based on evidence that the firefighter was never disabled. The Code requires that proof of recovery be shown. *O'Brien*, 64 Ill. App. 3d at 595.

¶ 32                          Question of Fact

¶ 33    Our review of the Board's contention as a question of fact compels the same conclusion–no evidence of recovery renders the Board's decision to terminate the pension the plaintiff had been receiving for nearly a decade against the manifest weight of the evidence. 40 ILCS 5/4-112 (West 2008) (satisfactory proof of recovery must be presented to the pension board to terminate a pension); *O'Brien*, 64 Ill. App. 3d at 596 ("there must be some evidence of recovery from the disability to justify the pension's termination").

¶ 34    The Board highlights in its brief its close decision in 2002 to award the plaintiff a disability pension: "Three trustees voted to award the disability and two voted to deny the disability." The Board then discusses the medical evidence presented in 2002 and the conclusions of the medical examination by Dr. Stamelos in 2005. Ultimately, the Board argues that satisfactory proof that the plaintiff has recovered from his disability may be gleaned from Dr. Lanoff's examination of the plaintiff in 2009 and his conclusion that no "objective basis for plaintiff's disability" exists in the medical records dating back to the original disability hearing.

¶ 35    The Board, however, ignores that in 2005, it voted to verify the continuance of the plaintiff's disability, which the Board found in 2002. It necessarily follows from the decision in 2002 to award a pension and the subsequent decision in 2005 to reaffirm the plaintiff's disability that the medical records of the plaintiff from the hearings in 2002 and 2005 provide no proof that the plaintiff recovered from his disability as of the "continuance of disability" hearing in February 2010. See *Hahn v. Police Pension Fund*, 138 Ill. App. 3d 206, 211 (1985) (issue of disability should be addressed as of the date the plaintiff's condition is at issue, rendering testimony of psychiatrists that examined the plaintiff many months after his separation from service "irrelevant").

¶ 36 Fundamentally, we reject the Board's contention that Dr. Lanoff's medical testimony and report constitute evidence that the plaintiff recovered from his disability when Dr. Lanoff unequivocally insisted that the plaintiff was never disabled. The Board tortures the English language to contend that one can *recover* from a disability one never had. As we concluded in addressing the legal question above, the Code does not authorize the Board to reexamine its original award of disability to the plaintiff in 2002, which it reaffirmed in 2005, in its "continuance of disability" hearing in 2010 based solely on evidence that the firefighter was never disabled.

¶ 37 In sum, Dr. Lanoff's report and testimony presented no evidence, much less satisfactory proof, that the plaintiff recovered from his disability at the time of the continuance of disability hearings in February 2010. The only evidence presented on the plaintiff's physical state as of February 2010 was Dr. Beaty's testimony that the plaintiff was still physically incapable of meeting the duties of a firefighter. The evidence at the hearing renders the conclusion opposite to that reached by Board clearly evident. *Abrahamson*, 153 Ill. 2d at 88.

¶ 38 Because the Board presented no proof that the plaintiff recovered from his disability, he remains entitled to his pension benefits. Under the Code, the Board may, on remand, direct that the plaintiff undergo another medical examination to either "verify continuance of disability" or provide "satisfactory proof" that the pensioner has "recovered from disability." 40 ILCS 5/4-112 (West 2008). To terminate pension benefits, satisfactory proof must be presented to the Board that the plaintiff *has recovered* from the disability the Board found in 2002, and reaffirmed in 2005, assuming the plaintiff is still younger than age 50 at the time any new examination is ordered. *Id.*

¶ 39                                      CONCLUSION

¶ 40 As a matter of law, the Illinois Pension Code does not permit the Board to revisit and reverse its original decision in 2002 granting a pension based on evidence presented at the continuance of disability hearing in 2010 that the pensioner was never disabled. Proof that the pension recipient never suffered disabling injury does not constitute proof of recovery as mandated by the Code. The examining physician's report and testimony that asserted only that the plaintiff was never disabled renders the Board's decision to terminate the pension against the manifest weight of the evidence, in light of the treating physician's testimony that the plaintiff remained physically unable to meet the full duties of a firefighter. The Board committed clear error in terminating the plaintiff's pension where no evidence of recovery was before it. We affirm the circuit court's reversal of the Board's decision.

¶ 41 Affirmed.

¶ 42 JUSTICE GORDON, dissenting.

¶ 43 I must respectfully dissent.

¶ 45      Plaintiff, a firefighter, claimed that, on March 6, 2001, he suffered an injury to his back while loading a stretcher with a 360-pound patient into an ambulance. Initially, plaintiff received X-rays and an MRI of his back, which were "normal" and negative for any disc herniation or degenerative disc change. Plaintiff complained of pain and was treated with physical therapy by an orthopedic surgeon, Dr. Richard Beaty. However, plaintiff still complained of pain. He was then referred to a pain specialist, who performed epidural injections. Plaintiff also continued to receive physical therapy and entered and completed a work-hardening program. Plaintiff continued to complain of pain and claimed he could not work. Dr. Beaty found plaintiff disabled because of his continued claim of pain.

¶ 46      On January 8, 2002, plaintiff applied for duty-related disability. He was examined by three physicians selected by the Orland Firefighters Pension Board. Dr. Rajeev Khanna found plaintiff's complaints to be only subjective and he did not "anticipate any permanent disability." Dr. Khanna found that plaintiff's weight gain contributed to his persistent lower back pain. The second physician, Dr. Svazas, made basically the same findings, including that plaintiff was not "permanently disabled from fire service." The third physician, Dr. William Earman, also found no objective injury. Although Dr. Earman was unable to come up with an accurate diagnosis for plaintiff's pain other than chronic lower back pain, he still opined that plaintiff was permanently disabled. On June 12, 2002, a functional capacity evaluation concluded that plaintiff met the current job demand levels of a firefighter. Plaintiff's treating physician, Dr. Beaty, however, opined that plaintiff continued to experience lower back pain and could return to work activity only with restrictions against repetitive bending or twisting.

¶ 47      At a hearing on July 31, 2002, the trustees of the Orland Firefighters Pension Fund awarded plaintiff a duty-related disability by a vote of three ayes and two nays.

¶ 48      On December 4, 2003, an occupational health doctor, Dr. J. Williamson-Link, concluded that plaintiff "remains unable to perform his full duty." As required by section 4-112, plaintiff underwent an independent medical examination. Orthopedic surgeon Dr. John Stamelos concluded that plaintiff did "not demonstrate any objective findings that would substantiate his complaint of continual pain in his lower back or groin," and found "no objective findings to substantiate his current disability." However, Dr. Stamelos found plaintiff permanently disabled based on plaintiff's claim of lower back pain. On November 30, 2009, plaintiff was examined by Dr. Martin Lanoff, a physiatrist, for an annual examination. In agreement with all the other doctors before him, Lanoff concluded that plaintiff's "subjective complaints were out of proportion to the objective findings. He is not nonorganic or inconsistent, but there is no medical pathology."

¶ 49      Dr. Lanoff indicated "No" on the physician's certification of continuance of disability, indicating his opinion that plaintiff no longer continued to be disabled to a point that he was not able to perform the duties of a firefighter. With respect to the question "is the member's injury/illness that prohibits him from performing his duties as a firefighter and/or officer the same injury/illness that caused him to qualify for disability benefits originally," Dr. Lanoff marked "n/a" and further stated "no disability." Later, in testimony before the Board, Dr.

Lanoff concluded that plaintiff was never disabled. The question asked of him and the answer given were:

"Q. And I just would have one more question, which is–and just to summarize the general thrust of your report–it's your contention that Mr. Hoffman was never disabled[?]

A. Correct. I don't see any physical pathology. I see multiple and consistent, yet persistent, subjective complaints. Yet everybody's workups are negative. Nobody even gives him much of a diagnosis."

It is because of this question and this answer that the circuit court of Cook County reversed the Board's decision to terminate plaintiff's disability. Although Dr. Beaty also testified he still has not found any objective evidence to support plaintiff's pain, and concludes that by returning plaintiff to work, it would place him and his coworkers in danger.

¶ 50    The Board conducted a hearing on the possible restoration to service of plaintiff, pursuant to section 4-112 of the Pension Code. 40 ILCS 5/4-112 (West 2008). After reviewing all the documents, testimony, medical reports, and exhibits, the Board issued a decision and order dated June 9, 2012, concluding that plaintiff's duty-related disability for a lower back injury was terminated.

¶ 51                                              ANALYSIS

¶ 52    The majority affirms the trial court's decision that the only evidence supporting the termination of plaintiff's permanent disability was Dr. Lanoff's opinion. As noted, Dr. Lanoff concluded that plaintiff never sustained a permanent disability in the first place. The majority concluded that the Board's decision was against the manifest weight of the evidence because Dr. Lanoff's opinion did not show that plaintiff has "recovered" from his previously determined disability. 40 ILCS 5/4-112 (West 2008).

¶ 53    According to the statute, a disability pension can be terminated only "[u]pon satisfactory proof to the board that a firefighter on the disability pension has recovered from disability." 40 ILCS 5/4-112 (West 2008).

¶ 54    When the Board awarded plaintiff a permanent disability in 2002, the 3 to 2 majority did so based on at best a soft-tissue injury with a subjective complaint of lower back pain. Although Drs. Beaty and Stamelos opined that plaintiff was permanently disabled, their opinions were based only on plaintiff's subjective complaints of pain. Now, eight years have passed and plaintiff still has no boney pathology or nerve-root damage, and physical therapy and work hardening have not alleviated his unsubstantiated pain. The majority of this court and the circuit court have interpreted the statute to mean that, unless there is evidence of a recovery from the permanent disability, the permanent disability remains. I agree.

¶ 55    Where I differ concerns the proof that was presented to the Board. The Board reviewed all of plaintiff's prior medical records and opinions. These opinions included the opinion of Dr. Beaty that plaintiff is still permanently disabled because he is a danger to himself and others; and Dr. Lanoff's opinion, based on a current physical examination and a review of the records, that plaintiff was not permanently disabled. The records included findings that there was no boney or neurological pathology. After eight years of medical care and

-11-

treatment, only unsubstantiated subjective pain exists. In its decision-making process, the Board can accept or reject each opinion that Dr. Lanoff provided. The Board is the trier of fact, and it is not our job to substitute our judgment for the Board's. *Paxton-Buckley-Loda Education Ass'n v. Illinois Educational Labor Relations Board*, 304 Ill. App. 3d 343, 350 (1999) (holding that an administrative agency's findings and conclusion on questions of fact are deemed *prima facie* true and correct, and reviewing courts will not reweigh evidence or substitute their own judgment for that of an administrative agency). The Board had the right to accept Dr. Lanoff's opinion that plaintiff is not *now* permanently disabled, based on the doctor's finding that plaintiff has no injury at the time of his physical examination, and can reject Dr. Lanoff's testimony that plaintiff never had a permanent disability. *Watra, Inc. v. License Appeal Comm'n*, 71 Ill. App. 3d 596, 602 (1979) (it is the role of the board to choose which testimony to accept and which to reject after assessing witness credibility and weighing the evidence). From Dr. Lanoff's testimony that plaintiff is not *now* disabled, the Board could reasonably infer that he had recovered from his permanent disability.

¶ 56                                                    CONCLUSION

¶ 57       For the foregoing reasons, I would reverse the circuit court and affirm the Board. I cannot find that the Board's decision is against the manifest weight of the evidence.