2026 IL App (1st) 250435-U

No. 1-25-0435

Order filed January 29, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JASMINE SANDORA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CH 9829 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE EVANSTON | ) | Honorable |
| FIREFIGHTERS' PENSION FUND, | ) | Clare J. Quish, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | | |

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Board's finding that a firefighter had recovered from her disability, and its decision to terminate her disability pension benefits, were against the manifest weight of the evidence.

¶ 2    Plaintiff, Jasmine Sandora, appeals from the circuit court's reversal of the decision by the

Board of Trustees of the Evanston Firefighters' Pension Fund (the Board) to terminate Sandora's

disability pension benefits. For the following reasons, we affirm the circuit court's judgment and reverse the Board's decision to terminate Sandora's benefits.

¶ 3                                 I. BACKGROUND

¶ 4     On March 8, 2020, Sandora was engaged in an act of duty when she sustained injuries to her left hand while responding to a structure fire. Prior to this incident, Sandora had not had any other injuries or problems with her left hand. Sandora underwent surgery on October 9, 2020, and again in April 2021.

¶ 5     Sandora participated in a functional capacity evaluation (FCE) on October 6, 2021. She put forth a maximum and valid effort but could not demonstrate the physical capabilities and tolerances needed to perform all of the essential functions of her job with the Evanston Fire Department. Although she reached maximum medical improvement, she had permanent restrictions on her physical capabilities.

¶ 6     Sandora performed light duty office work for several months but was advised by the Evanston Fire Department that it could not offer her a permanent light duty position.

¶ 7     Sandora was examined by three physicians selected by the Board, pursuant to section 4-112 of the Illinois Pension Code (Code) (40 ILCS 5/4-112 (West 2020)), one of whom was her treating physician, Dr. Mark Cohen. All three physicians found Sandora permanently disabled for service in the Evanston Fire Department as a result of the injury she sustained on March 8, 2020.

¶ 8     On December 13, 2021, the Board conducted a hearing on Sandora's application for a duty disability pension. After the hearing, the Board found that Sandora was physically disabled and granted her a line of duty disability pension.

¶ 9       In early 2023, the Board became aware of two videos from Sandora's social media account. Pursuant to section 4-112 of the Code, the Board requested that Sandora undergo an independent medical examination (IME) with Dr. Michael Vender.

¶ 10      Dr. Vender conducted his IME on April 10, 2023, and submitted a report to the Board. His report stated that Sandora indicated she still had pain in her wrist. He stated that the X-rays showed that the performed surgery to her wrist had "satisfactorily healed."

¶ 11      Dr. Vender noted that there were some limitations on her wrist movement. However, he opined that this should not cause a functional deficit. Dr. Vender acknowledged that she had a FCE in 2021 but stated that FCEs "have a significant amount of subjectivity and have only limited benefit in trying to determine work or activity capabilities." He stated that the result of the FCE indicated significant deficits, "more than one would expect from this type of injury and subsequent surgery."

¶ 12      Dr. Vender further indicated that as part of the record provided and reviewed, there were two video snippets demonstrating activities that involved very forceful activities of the wrist, including stress on range of motion. He opined that the ability to perform these activities was "not consistent with the report of the functional capacity evaluation."

¶ 13      On April 19, 2023, the Board issued a Notice of Hearing to Sandora to determine if she had recovered from her disability. Sandora requested that she be given time to respond to Dr. Vender's IME and the Board granted that request.

¶ 14      The discovery deposition of Dr. Vender took place on June 21, 2023. During that deposition, Dr. Vender testified that he was provided with two videos regarding activities that Sandora had been engaged in. He said in the first video she was doing squats with a barbell, and in the other video, she was swinging from a rope off a cliff and falling into the water. When

discussing the weightlifting video, he noted that "the most potential difficulties someone may have is not in [a] neutral position like that video." But he opined that someone with a sore wrist that could not do routine activities would not be able to do the activities demonstrated in the videos.

¶ 15    In responding to the video of Sandora allegedly swinging from the cliff, Dr. Vender stated that "it points to how useless the FCEs are, that there [were] so many limitations in that FCE that are not consistent with that first video, let alone the second video." He stated that the videos corroborated the opinions he reached during the IME.

¶ 16    Dr. Vender testified that he did not think the Board's initial determination of disabled was correct and that he disagreed with the findings of the FCE and the Board in 2021. When asked why the FCE was useless, Dr. Vender stated, "Well, look at this patient: Weightlifting, jumping from a cliff."

¶ 17    When asked how much a firefighter lifts, Dr. Vender stated that he did not know. When asked how much weight a firefighter carries, he stated that he did not know. When asked how much weight was on the barbell in the video of Sandora, he stated that he did not know. When asked how many times she lifted that weight, he stated that he did not know.

¶ 18    Later in the deposition, Dr. Vender was asked whether he thought Sandora was lying about her pain. He stated, "[t]he videos certainly don't show that degree of impairment. I mean, for someone who can't do all these things: can't move their blanket, activities of daily living. Weightlifting? Jumping off a cliff? That's far beyond activities of the daily living."

¶ 19    In early July, Sandora's counsel submitted a medical record review prepared by Dr. Mark Cohen, who had treated her after the injury. Dr. Cohen stated that Sandora underwent surgery for her wrist on September 29, 2020. On February 8, 2021, Sandora was seen for a follow-up visit.

Her therapy was unable to progress due to worsening left wrist pain. Sandora confirmed that she had experienced wrist pain since the March 2020 injury.

¶ 20    Dr. Cohen noted that on April 15, 2021, Sandora underwent a second surgery. On September 1, 2021, Sandora was still experiencing pain with weightbearing across her wrist in an extended position.

¶ 21    The last medical record in the case that Dr. Cohen reviewed was from October 13, 2021. At that time, Sandora was seen for a follow-up visit. She had undergone an FCE which had given her several restrictions related to her work activities.

¶ 22    Dr. Cohen noted that he reviewed an eight-second video that depicted Sandora in the gym showing her standing and holding a bar with weights attached. Both arms were in extension and her wrists in a neutral position while she held the bar against her thighs. Dr. Cohen opined that he would not expect this type of exercise to lead to significant wrist symptoms or problems. Her wrist injury led to discomfort during twisting activities with applied load to the wrist. Dr. Cohen stated that he did not believe the eight-second video suggested that Sandora should be able to return to full and unrestricted work activities. That conclusion was not supported by "any anatomic or scientific basis." The FCE was still valid, and the IME report by Dr. Vender did not change his opinion.

¶ 23    A hearing was held on August 11, 2023. At that hearing, Sandora's counsel objected to the introduction of Board Exhibit 5B, the video allegedly depicting Sandora swinging from a rope. Counsel indicated that Sandora and her wife would testify that the video did not depict Sandora at all, but rather Sandora's wife. Counsel also objected to the introduction of Dr. Vender's IME as an exhibit, since his opinion was based on the rope-swinging video. The Board reserved ruling on the objections until after the evidence was presented.

¶ 24    Sandora testified that the video depicted in Exhibit 5A, the weightlifting video, was taken in November 2022 at her gym. She became a member there in 2021 and continued to go there to lift weights three days a week. In the video, she lifted the barbell two times in a deadlift. Her wife, who is a personal trainer, was the one filming. The weights were 40 pounds, and the barbell was either 35 or 45 pounds, so she was lifting between 75 to 85 pounds. Sandora testified that she had pain in her wrist from the movement, and therefore only performed the movement three times.

¶ 25    Sandora testified that the video depicted in Exhibit 5B was taken of her wife in Aruba in December 2022.

¶ 26    Sandora testified that she had not seen a medical professional about her wrist since her last visit to Dr. Cohen on October 13, 2021. She was currently contracted to Condell Medical Center to assist in teaching paramedic students. She was also enrolled in school at National Louis University for mental health counseling. She occasionally taught yoga.

¶ 27    Sandora testified that she experiences pain when carrying groceries, getting dressed, cooking, doing lawn work, getting up off the floor or out of a chair, and opening jars. If something hits her arm, she experiences pain in her wrist. She has adapted by predominantly using her right hand. She had been told that there was no other medical treatment available to her, so she had not sought further treatment.

¶ 28    Sandora stated that there are duties of a firefighter that she felt she could not perform.

¶ 29    Sandora noted that Dr. Vender met with her for approximately 10 minutes. He did not ask her about an activity of daily living log.

¶ 30    Sandora's wife, Martina, testified that she was the one depicted in the rope-swinging video, not Sandora. Martina noted that Sandora cannot open jars, lift heavy or awkward objects, has trouble getting up, and is in pain if anything accidentally bumps her arm.

¶ 31    Following the hearing, in its written order, the Board found that there was "satisfactory proof" that Sandora had recovered from the disability to her left wrist. It initially noted that it sustained the objection to Exhibit 5B and that it would not be admitted into evidence or considered by the Board in reaching its decision. It further found that while Sandora objected to the introduction of Dr. Vender's IME, Exhibit 5B was not the sole basis of his opinion, and therefore, the objection to Dr. Vender's IME was overruled.

¶ 32    The Board found Dr. Vender's IME to be "credible and thorough." It also noted that Dr. Vender had reviewed the weightlifting video and found Sandora's ability to engage in forceful activities with her left wrist was inconsistent with the results of the FCE from 2021. Rather, the activities in the video showed that Sandora was able to perform full unrestricted duties of a firefighter/paramedic. The Board also relied on the fact that Sandora had not sought any medical treatment for her left wrist since she last saw Dr. Cohen in October 2021, and that she had not seen a physical therapist or pain specialist. The Board found this inconsistent with her claims of significant limitations in her activities of daily living.

¶ 33    The Board stated that it considered the medical record review of Dr. Cohen but gave more weight to the opinions expressed by Dr. Vender. The fact that Dr. Cohen did not perform a physical exam on Sandora, and had not treated her since her surgery, were factors the Board considered in evaluating the weight to be given to his opinions. The Board terminated Sandora's disability pension benefits.

¶ 34    Sandora filed a complaint for administrative review in the circuit court. The circuit court reversed the decision of the Board, finding that it was against the manifest weight of the evidence.

¶ 35    The Board now appeals.

¶ 36                                    II. ANALYSIS

¶ 37     On appeal, the Board argues that its decision to terminate Sandora's disability pension benefits was not against the manifest weight of the evidence. Sandora maintains that the record lacks "satisfactory proof" that she recovered from her disability as required by the Code. 40 ILCS 5/4-112 (West 2020).

¶ 38     We review the decision of the administrative agency, not that of the circuit court. *Village of Oak Park v. Village of Oak Park Firefighters Pension Board*, 362 Ill. App. 3d 357, 365 (2005). The factual findings of an administrative agency are deemed *prima facie* true and correct, and may be reversed only if they are against the manifest weight of the evidence. *Hammond v. Firefighters' Pension Fund of the City of Naperville*, 369 Ill. App. 3d 294, 307 (2006). An agency's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Carrillo v. Park Ridge Firefighters' Pension Fund*, 2014 IL App (1st) 130656, ¶ 21. A reviewing court may not reweigh the evidence or make an independent determination of the facts. *Hoffman v. Orland Firefighters' Pension Board*, 2012 IL App (1st) 112120, ¶ 18.

¶ 39     However, the deference we afford the Board's decision is "not boundless." *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 507 (2007); see also *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 210-12 (2006) ("our review cannot amount to a rubberstamp of the proceedings below"). "Even when the decision is supported by some evidence, which if undisputed would sustain the administrative finding, it is not sufficient if upon consideration of all the evidence the finding is against the manifest weight." *Scepurek v. Bd. of Trustees of the Northbrook Firefights' Pension Fund*, 2014 IL App (1st) 131066, ¶ 26.

¶ 40     Under section 4-112 of the Code, "[u]pon satisfactory proof to the board that a firefighter on the disability pension has recovered from disability, the board shall terminate the disability pension." 40 ILCS 5/4-112 (West 2020). "The Board may not terminate a disability pension

'except in compliance with the statutory requirements.' " *Hoffman*, 2012 IL App (1st) 112120, ¶ 22 (quoting *O'Brien v. Board of Trustees of the Firemen's Fund of the City of East St. Louis*, 64 Ill. App. 3d 592, 595 (1978)). The Code must be construed liberally in favor of the rights of the applicant. *Mohan v. Marion Police Pension Board*, 2023 IL App (5th) 210426, ¶ 30.

¶ 41    Here, the Board's decision to terminate Sandora's disability pension was against the manifest weight of the evidence because there was no satisfactory proof that she recovered from her disability, as required by the Code. The Board stated in its order that Dr. Vender's IME was "credible and thorough" and that his testimony at his deposition was "credible and consistent with the opinions he expressed in his written report." While the Board considered Sandora's treating physician's medical record review, it gave "more weight to the opinions expressed by Dr. Vender than those expressed by Dr. Cohen in his report," because Dr. Cohen "did not perform a physical exam of Sandora, had not treated her since surgery and mostly recited the history of his past medical treatment of her."

¶ 42    While the Board relied heavily on Dr. Vender's opinions to find that Sandora recovered from a disability, Dr. Vender never made such findings. On the contrary, Dr. Vender stated in his report that Sandora's descriptions from the December 2021 duty disability hearing, of her difficulties performing routine activities, were "more than one would expect from this type of injury and subsequent surgery." He stated that Sandora's abilities to perform the activities shown in the two videos he watched were not consistent with the FCE results, or her testimony about her difficulties during the December 2021 hearing.

¶ 43    During his deposition, Dr. Vender testified that the results of the FCE were not consistent with the "forceful" activities he saw in the two videos of Sandora lifting weights and swinging from a rope. He stated that an FCE was "useless" and "often misleading" because it can

underestimate or overestimate a person's capabilities. When asked why he believed the FCE was useless, he stated, "[w]ell look at this patient: weightlifting, jumping from a cliff." He further stated that he would not give much weight to the findings of an FCE in making a determination as to whether somebody could return to work. When asked how much a firefighter could carry, or how much weight a firefighter is expected to lift, Dr. Vender stated that he did not know.

¶ 44     Dr. Vender concluded that Sandora was "not disabled" and that the initial determination by the Boad that Sandora was disabled was not right. When asked if he would disagree with the findings of the Board, and reject the FCE in its entirety, Dr. Vender replied, "Yes."

¶ 45     Because Dr. Vender never opined that Sandora recovered from a disability, and instead simply found she was not disabled and that he would not have found her to be disabled in 2021, we find that Board's conclusion that Sandora had recovered from her disability was against the manifest weight of the evidence. We find support for this conclusion in *Hoffman*.

¶ 46     In *Hoffman*, the plaintiff, a firefighter with the Orland Fire Protection District, was injured while loading a patient on a stretcher. 2012 IL App (1st) 112120, ¶ 3. After a duty-related pension hearing, the Board awarded the plaintiff duty-related disability pension benefits in 2002. *Id*. ¶ 9. Thereafter, the Board periodically requested the plaintiff undergo an IME to determine whether he should still get disability benefits. *Id*. ¶ 10. In 2005, he was told by his treating physician that he could only undergo an FCE with limitations, so the independent doctor concluded the plaintiff was unable to perform the duties of a firefighter. *Id*. In 2009, the Board requested a medical examination by a board-selected physician. *Id*. ¶ 11. The doctor found no objective basis for the plaintiff's complaints and no medical pathology to corroborate the pain. *Id*.

¶ 47     At a hearing, the plaintiff's long-term treating doctor opined that returning to work under his current condition would put him and his coworkers in danger. The board-selected physician

testified that the plaintiff was not disabled and had never been disabled. *Id.* ¶ 15. The Board terminated the plaintiff's disability pension, finding that he had recovered from his injury. *Id.* ¶16.

¶ 48     On appeal, this court found that the Code "does not authorize the Board to reexamine its original award of disability," based on "evidence that the firefighter was never disabled." *Id.* ¶ 36. We found that the doctor's report and testimony presented no evidence, "much less satisfactory proof, that the plaintiff recovered from his disability at the time" of the hearing. *Id.* ¶ 37. Because the Board presented no proof that the plaintiff recovered from his disability, he remained entitled to his pension benefits. *Id.* ¶ 38. We noted that upon remand, the Board may direct the plaintiff to undergo another medical examination to either verify continuance of a disability or provide "satisfactory proof" that the plaintiff recovered from the disability. *Id.*

¶ 49     Similarly, here Dr. Vender's report and testimony never asserted that Sandora had recovered from her disability, and therefore the Boad's decision to terminate Sandora's disability pension benefits, based primarily on Dr. Vender's IME and testimony, was against the manifest weight of the evidence. We find this to be true, especially in light of the treating physician's testimony that Sandora remained physically unable to meet the full duties of a firefighter.

¶ 50     We also find troubling Dr. Vender's reliance on the rope-swinging video in reaching his conclusion that Sandora was no longer disabled, when in fact it did not depict Sandora. Dr. Vender noted in his report that the activities performed in the social media videos were forceful activities using the wrist, and the ability to perform the activities "was not consistent with the report of the [FCE]." During his discovery deposition, Dr. Vender stated that videos "point[] to how useless the FCEs are, that there [were] so many limitations in that FCE that are not consistent with that first video, let alone the second video." When asked why the FCE was useless, he stated, "well look at this patient: weightlifting, jumping off a cliff." When asked about Sandora's pain, and whether he

thought she was lying, Dr. Vender again referenced weightlifting and jumping off a cliff, stating, "[t]hat's far beyond activities of the daily living."

¶ 51 Dr. Vender's IME and deposition testimony, in which he concluded that Sandora was not disabled, were both made under the impression that Sandora was depicted in the rope-swinging video. Dr. Cohen, on the other hand, Sandora's treating physician and one of the Board-selected physicians who examined her as part of the initial finding of a disability by the Board in 2021, reviewed the weightlifting video and not the rope-swinging video. His opinion regarding her continued disability did not change after reviewing the weightlifting video, and Dr. Vender agreed with Dr. Cohen's opinion that the neutral position exhibited in the weightlifting video would not be the most difficult position for someone with the type of wrist injury Sandora complained of. Accordingly, Dr. Cohen's opinion was not at all influenced by the rope-swinging video, whereas Dr. Vender mentioned it several times in his report and deposition testimony.

¶ 52 Accordingly, we find that the Board erred in assigning greater weight to Dr. Vender's opinion than Dr. Cohen's opinion where Dr. Vender's opinion was based on an erroneous video, the belief that the FCE, which formed the basis of Sandora's original finding of disability, was "useless," and where he disagreed with the Board's original finding of a disability. See *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 507 (2007) (the Board erred in assigning greater weight to doctor that failed to consider or base his opinion on relevant, material evidence that was key under the circumstances of this case). While the Board's decision may have been supported by *some* evidence, which if undisputed would sustain the administrative finding, after considering all the evidence, we find that the decision is against the manifest weight. See *Scepurek*, 2014 IL App (1st) 131066, ¶ 26 ("Even when the decision is supported by some

evidence, which if undisputed would sustain the administrative finding, it is not sufficient if upon consideration of all the evidence the finding is against the manifest weight.").

¶ 53                                      III. CONCLUSION

¶ 54    For the foregoing reasons, we affirm the circuit court's reversal of the Board's decision.

¶ 55    Circuit court judgment affirmed.

¶ 56    Board decision reversed.