WATRA, INC., *et al.*, Plaintiffs-Appellants, *v.* LICENSE APPEAL COMMISSION, CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 78-991

Opinion filed April 27, 1979.—Rehearing denied May 25, 1979.

Schmidt, Di Monte, Baker & Lizak, of Chicago (Chester A. Lizak, of counsel), for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert L. Thompson, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court affirming the decision of the Local Liquor Control Commissioner of the City of Chicago and the License Appeal Commission revoking plaintiffs' liquor license. The license was revoked when the Local Liquor Control Commissioner found that Boleslaw Potoczak, plaintiffs' agent, committed an aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4) upon a customer and failed to render assistance to the customer or call the police. On appeal, plaintiffs contend: (1) the Local Liquor Control Commissioner's original order of revocation is invalid because it was not served upon them within five days of the hearing, (2) the License Appeal Commission's order affirming the revocation is invalid because it was signed only by the chairman, and (3) the decision is not supported by substantial evidence.

The following pertinent evidence was adduced at the hearing before the Local Liquor Control Commissioner.

*For the Defendants*

*Joseph C. Drozd*

He is a radio dispatcher for the City of Chicago. At about midnight on June 25, 1977, he was in the Watra Tavern at 4758 South Pulaski with Teressa Piaszczynski. He ordered two beers and was charged $.65 each. About one half hour later he ordered three beers for himself, Teressa and another patron and was charged $1.25 each. When he asked why the price had increased the waitress told him because there was entertainment in the back room. He placed the money for the beers on the bar, told the waitress he did not want the beers and started to leave the tavern. As he

opened the door he saw "these two gentlemen running after me with cue sticks." One of them, an elderly man named Novak, started poking him with the stick while the other man, Boleslaw Potoczak, tried to grab him by the arm. Potoczak hit him in the back with the cue stick. He was able to break loose, run outside and close the door behind him. When Potoczak opened the door to follow him, the door struck Novak. Potoczak and Novak "came charging out of the door." Novak's hand was bleeding and Potoczak said, "You done it with the door" and "I get you for this." He walked toward his car to get away, but Novak hit him across the shoulder with the cue stick. When he tried to pull the stick from Novak, both he and Novak fell to the ground. Potoczak yelled, "I kill you, you s.o.b." and, swinging the stick "like a baseball bat," hit him across the head. The blow knocked him out. When he got up his nose felt broken and he could not see out of his right eye. As he staggered to his car he heard a woman holler that she had called an ambulance. He was taken to Holy Cross Hospital and placed in intensive care. He remained in the hospital from June 25 until July 8.

On cross-examination he stated that he left $3.70 on the bar for the three beers and a tip. He told the barmaid he did not understand why the price of the beer had been increased. He did not have a conversation with Potoczak about the price of beer, nor did he inform Potoczak or Novak that he was leaving. Potoczak appeared to have been drinking, but did not seem intoxicated. Although he remembered having conversations with Officers Bamberger and Zawila while he was hospitalized, he denied telling either of them that the barmaid referred him to the owner and that he asked the owner why the price of beer had been increased. He further denied telling the officers that Novak and Potoczak "banged" his head against the door. He denied striking Potoczak or Novak with a cue stick.

*Teressa Piaszczynski*

She substantially corroborated Dorzd's testimony concerning the incident at the Watra Tavern on June 25, 1977. When Potoczak opened the door to go after Drozd, he struck Novak in the head with the door. Novak's forehead was bleeding. Potoczak and Novak continued to hit Drozd with cue sticks outside of the tavern. After Potoczak struck Drozd on the head and threatened to kill him she called the police and an ambulance. She did not see Drozd strike either Novak or Potoczak.

*Anthony Zawila, Chicago Police Officer*

He visited the Watra on June 26, 1977, to investigate the incident which occurred the night before. Zawila interviewed Potoczak who stated he had been involved in an "altercation" with a customer over the price of beer. When Potoczak approached the customer to ask what the problem was, the customer grabbed his arm. Potoczak became fearful of bodily harm so he struck the customer with a cue stick. The cue stick,

which Potoczak showed him, was broken in half. On the same day he interviewed Drozd in the intensive care unit of Holy Cross Hospital.

On cross-examination he stated that Drozd did not state that he approached the owner, touched the owner's arm and asked why the price of beer had been raised. Drozd did not state that he was taken outside or that his head was "banged" against the front door. Drozd stated that the owner of the tavern and Novak struck him with a cue stick as he was trying to leave the tavern. Drozd also stated that when he left the tavern Potoczak followed and stated, "I'll kill you, you son-of-a-bitch."

*For the Plaintiffs*

*Joseph Bamberger, Chicago Police Officer*

He also interviewed Drozd at the hospital on June 26, 1977. Drozd stated that he approached the owner of the bar, touched the owner's arm and asked him why the price of beer was raised. A struggle ensued between Drozd and the owner. A second man also struck him with a cue stick. Drozd stated that he was taken outside and his head was "banged" against the front door window.

*Celina Hobros*

On June 24, 1977, she was employed at the Watra as a barmaid. She served Joseph Drozd and a lady companion drinks five times that evening. Drozd did not want to pay the last time she served him, stating "the beer was too expensive." She did not reply, but went to get the owner, Mr. Potoczak. When Potoczak approached Drozd, Drozd grabbed him by the shirt, pulled a cue stick away from him, and pushed him out the door. The cue stick broke when Drozd took it from Potoczak. Drozd then hit Potoczak over the head with the stick. When Novak came to assist Potoczak, Drozd hit him also. Drozd ran away, stopping to throw the cue stick at Potoczak. Novak struck Potoczak on the head with a cue stick. Potoczak's head was bleeding. She took Potoczak to his room above the Watra and returned to the tavern. She noticed an ambulance pass by outside. She never saw Potoczak strike Drozd.

*Boleslaw Potoczak*

He is vice-president of Watra, Inc. and works behind the bar. There is a large hall, a tavern and a restaurant at Watra. He was playing pool there on June 25, 1977, when the barmaid asked him to explain the price of beer to Drozd. When he approached Drozd to apologize for the increase, Drozd grabbed his shirt and threw him outside. Drozd broke the cue stick Potoczak was holding and hit him several times on the head and the hands with it. When Novak came outside Drozd hit him on the head twice with his hands. As Potoczak and Drozd struggled, Novak mistakenly hit Potoczak on the head with a cue stick causing him to bleed. Potoczak went to his home above the Watra, cleaned up and returned

downstairs a half hour later. Drozd and Novak were gone. He denied telling the police that he struck Drozd with a cue stick.

On cross-examination he stated he did not call the police about the incident "because it was late." Neither he nor Novak hit Drozd in the Watra. He chased after Drozd to "hold him for the police."

*For the Defendants—Rebuttal*
*Joseph Drozd*

As he was leaving the tavern Potoczak poked him with a cue stick. He did not grab Potoczak in the tavern nor did he strike anyone during the incident.

The hearing before the Local Liquor Control Commissioner was concluded on August 24, 1977. The Commissioner thereafter found that Watra, Inc. through its agent, Boleslaw Potoczak, committed an aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(1)) upon Joseph Drozd and knowingly failed to render aid or call the police in violation of article III, rule 3 of the Illinois Liquor Control Commission. On August 29, 1977, the Commissioner ordered that the City of Chicago retail liquor license issued to Watra, Inc. be revoked. The order of revocation was affirmed by the License Appeal Commission on October 28, 1977, and by the circuit court of Cook County on March 10, 1978.

OPINION

■■ Plaintiffs first contend that the order of revocation entered on August 29, 1977, by the Local Liquor Control Commissioner is void because it was not served upon them within five days of the August 24, 1977, hearing as required by section 5 of article VII of the Liquor Control Act. (Ill. Rev. Stat. 1977, ch. 43, par. 149.) However, at oral argument plaintiffs chose not to argue this point, conceding that the weight of authority is against their position, but refusing to waive the issue. In *Alpern v. License Appeal Com.* (1976), 38 Ill. App. 3d 565, 348 N.E.2d 271, *Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 371 N.E.2d 1116, and *Rincon v. License Appeal Com.* (1978), 62 Ill. App. 3d 600, 378 N.E.2d 1281, we held that the five-day requirement is directory rather than mandatory and that the failure to comply with the requirement does not deprive the local commissioner of jurisdiction. Accordingly, we find plaintiffs' contention to be without merit.

Plaintiffs next contend that the License Appeal Commission order affirming the revocation is void because it is signed only by the chairman and not by the other two members. They argue that the chairman, rather than the full commission, actually decided their appeal. Plaintiffs concede that it is not necessary for each member of the License Appeal Commission to hear oral arguments so long as each member considers

and appraises the evidence. They argue, however, that such consideration and appraisal was not shown here. An administrative agency, however, is entitled to a presumption that all of its official acts have been performed properly and this presumption extends to a reading and consideration of the evidence. (*Des Plaines Currency Exchange, Inc. v. Knight* (1963), 29 Ill. 2d 244, 194 N.E.2d 89, *cert. denied* (1964), 376 U.S. 969, 12 L. Ed. 2d 84, 84 S. Ct. 1136.) Plaintiffs here have failed to overcome this presumption. The order explicitly states that the commission has reviewed the transcripts taken before the Local Liquor Control Commissioner. The order recites that it was entered by the commission. It does not purport to be entered by any individual member thereof. The chairman's signature, to which plaintiffs refer, is actually on an affidavit certifying that the copy of the order in the record is a true copy. The chairman's certification does not cast any doubt upon the commission's procedures.

■ Plaintiffs argue, however, that the presumption of regularity was overcome when, in denying a petition for rehearing, the commission failed to respond to plaintiffs' allegation that the full commission did not participate in the decision. The Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) does not, however, require the agency to deny the allegations of a party seeking review and such undenied allegations do not stand admitted. (*Jewell v. Carpentier* (1961), 22 Ill. 2d 445, 176 N.E.2d 767.) Accordingly, we believe plaintiffs have not established that the full commission failed to consider their appeal.

Plaintiffs finally contend that the decision of the Local Liquor Control Commissioner is not supported by substantial evidence. They argue that the evidence offered against them is contradictory, unbelievable and impeached. Section 11 of the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 274) states that "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." A reviewing court is not authorized to reweigh the evidence presented to the agency, but is limited to ascertaining whether the findings and decisions of the agency are against the manifest weight of the evidence. (*Arlington Heights Federal Savings & Loan Association v. Knight* (1963), 29 Ill. 2d 558, 194 N.E.2d 338.) In order for the decision to be against the manifest weight of the evidence an opposite conclusion must be clearly evident. *Legones v. License Appeal Com.* (1968), 100 Ill. App. 2d 394, 241 N.E.2d 499.

■■ ■ After carefully reviewing the record before us in its entirety we believe the decision of the Local Liquor Control Commissioner is supported by the manifest weight of the evidence. The witnesses for the City of Chicago and for plaintiffs presented conflicting accounts of the June 25, 1977, altercation at the Watra. Drozd and Piaszczynski each

stated that Potoczak attacked Drozd without provocation, severely injured him and left without rendering any assistance. Potoczak and Hobros, however, testified that Drozd initiated the confrontation. Potoczak contended he did not strike Drozd. Officer Zawila testified that Potoczak admitted to striking Drozd with a cue stick, but that he did so out of fear. The Local Liquor Control Commissioner, through his designated deputy sitting as the hearing officer and trier of fact, after listening to this conflicting testimony in the context of the full hearing and observing the demeanor of the witnesses, chose to accept the testimony of Drozd and Piaszczynski and to reject that of Potoczak and Hobros. As this court stated in *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 277, 254 N.E.2d 814, 820:

> "In cases of this kind, we, and the Circuit Court, and the License Appeal Commission are all required to accept the judgment of the Local Commissioner as to the credibility of the witnesses. It is only he, as the trier of the facts, who is authorized to assess credibility, weigh the evidence, reconcile conflicting evidence, if possible, and, if not possible, determine which witnesses are worthy of belief."

The decision of the local commissioner cannot be said to be against the manifest weight of the evidence merely because he chose to believe the testimony of the City of Chicago's witnesses rather than that of plaintiffs' witnesses. The testimony of Drozd and Piaszczynski was certainly not so improbable or contradictory as to be unbelievable and we see no reason to substitute our judgment for that of the local commissioner.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.