# Illinois Official Reports

## Appellate Court

---

**Glaser v. City of Chicago, 2018 IL App (1st) 171987**

---

| | |
|---|---|
| Appellate Court Caption | LAURA GLASER and LEONARD LOVENTHAL, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, a Municipal Corporation; THE CITY OF CHICAGO ZONING BOARD OF APPEALS; JONATHON SWAIN, Chairman; SOL FLORES; SHEILA O'GRADY; BLAKE SERCYE; SAM TOIA; and CHICAGO TITLE LAND TRUST, NO. 8002366263, Defendants (Chicago Title Land Trust, No. 8002366263, Defendant-Appellee). |
| District & No. | First District, Sixth Division<br>Docket No. 1-17-1987 |
| Filed | March 16, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-18562; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas J. Ramsdell, of Thomas J. Ramsdell & Associates, of Chicago, for appellants.<br><br>Timothy S. Buckley, of Howard & Howard Attorneys, PLLC, of Chicago, for appellee. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.

Justices Cunningham and Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs, Laura Glaser and Leonard Loventhal, appeal from the judgment of the circuit court of Cook County affirming the order of the City of Chicago Zoning Board of Appeals (Board), which reversed the zoning administrator's decision to deny the application of the defendant, Chicago Title Land Trust, No. 8002366263 (trust), for zoning variations under the Chicago Municipal Code (Code) (Chicago Municipal Code § 17-1-0100 *et seq.* (added May 26, 2004)). For the reasons that follow, we affirm.

¶ 2    The following factual recitation is taken from the pleadings, exhibits, and testimony of record.

¶ 3    The plaintiffs live at 3522 North Janssen Street in Chicago, in a three-story residence they constructed in 1999. The trust later purchased the house directly north of the plaintiffs, located at 3528 North Janssen Street, for its beneficiary, Carson Khyl. The Khyl residence was built in 1901, and, like other houses on the block, has a front porch, irregular roof line, and sits on a parcel approximately 50 feet wide and 125 feet deep. A garage is situated in the south corner of the rear yard, abutting an alley, but unlike other properties on the block, the Khyl residence also has a driveway.

¶ 4    The Code contains a zoning ordinance that limits the height of buildings and provides the minimum distances they must be "set back" from property boundaries on each side. See Chicago Municipal Code § 17-2-0300 *et seq.* (amended Apr. 15, 2015). When the trust acquired the Khyl residence, the house was 35 feet tall and had setbacks of 12.44 feet in front, 1.55 feet on the north side, zero feet on the south side, and 1.46 feet on the rear side. Due to the age of the house, and variations to the setback requirements previously granted by the Board, these dimensions are in legal nonconformity with contemporary regulations. Currently, similar houses in the same zoning district cannot exceed 35 feet in height and require setbacks of 14.85 feet for the front yard, 34.65 feet for the rear yard, 4 feet for each side yard individually, and 10 feet for both side yards combined. See *id.*

¶ 5    Khyl retained an architect to renovate the house, and the trust filed an application with the City of Chicago Department of Planning and Development for additional height and setback variations in connection with the renovation. The requested variations included (1) maintaining the front yard setback at 12.44 feet, (2) setting the rear yard setback at 2.14 feet, (3) setting the north side and south side setbacks at 2.05 feet and 0.48 feet, respectively, and (4) increasing the allowable height to 38.39 feet for the construction of a three-story addition to the rear of the house, which would also include an attached two car garage, a front porch addition, an unenclosed parking stall, and a raised rear patio.

¶ 6    On May 20, 2015, the zoning administrator denied the trust's variation requests. The trust filed an appeal from the variation denials with the Board, which held a hearing on October 16, 2015.

¶ 7    At the hearing, the Board heard witnesses for the trust and the plaintiffs, who objected to the variations. The Board also received diagrams of the proposed renovations, reports by the parties' land planning experts, and information regarding variations that were granted to the plaintiffs when they built their house. We set forth only the evidence that is relevant to this appeal.

¶ 8    Timothy Barton, the trust's land planning expert, opined that a front setback variation is needed to preserve the Khyl residence's front porch and that a height variation is needed due to the difficulty in "add[ing] to any floor space vertically" under the current zoning rules. Barton also testified that, although the garage would be rebuilt in the same location in the south corner of the rear yard, the rear setback poses a hardship due to the need to preserve an oak tree, construct "screening" for privacy from neighbors, and alleviate the "canyon-like effect" caused by "very large" buildings to the north and south that leave the yard "in shadow much of the time."

¶ 9    According to Barton, the conditions necessitating the setback variations are neither generally applicable to similarly-zoned properties nor created by the trust or Khyl, as the residence predates current zoning rules and the neighboring buildings were developed several years "before the [trust's] interest in the property." Barton denied that the renovations would interfere with light or air, as a 15-foot high wall connecting the residence to the garage would face a wall on the plaintiffs' property. He opined that this layout would "benefit" the neighbors to the north "by maintaining the open space in the north half of the lot." Barton denied that the variations would alter the neighborhood's character and stated that one of the project's "main thrusts" is rehabilitating and reusing the existing house. On cross-examination, he acknowledged that the house, like several others on the block, is rated "orange" by the Chicago Historic Resources Survey, and those residences "have more or less consistent setbacks on the front."[1]

¶ 10    Patrick Murphy, the trust's architect, testified that the zoning ordinance's height limit poses a hardship because the Khyl residence's first floor is approximately "six and a half feet above grade," which reduces the total height available for the upper floors. Therefore, a variation of "a few extra feet" is needed to render the third floor addition "habitable" while maintaining the height of the first and second floors relative to the windows. This plan, according to Murphy, would incorporate low roof lines and preserve "the existing structure and look of the building." Murphy agreed that "the main goal" of the renovation project is to maintain "the historic features of the facade of the home" and stated that no variation to the allowable floor area ratio is necessary.

¶ 11    Khyl testified that he requested the variations in order to "build a nice home for [his] family" while preserving the residence's historic features. He denied that his goal was to "make money."

¶ 12    George Kisiel, the plaintiffs' land planning expert, stated in his report that the proposed renovations would "demolish a significant amount" of the Khyl residence. He testified that

---

[1]The Chicago Historic Resources Survey is a database of historic buildings produced by the City of Chicago. Properties classified as "orange" have "some architectural feature or historical association that made them potentially significant in the context of the surrounding community." *Chicago Historic Resources Survey*, City of Chicago, http://webapps.cityofchicago.org/landmarksweb/web/ historicsurvey.htm (last visited Mar. 2, 2018).

"nothing unique" about the property would prevent renovations consistent with the neighborhood's character, and that no hardship would result from maintaining the current setbacks because, based on the renovation plans, "[a]ll *** existing nonconforming attributes" would be "demolished" and replaced with new construction. According to Kisiel, the requested variations would render the residence "a full story taller *** and 50 percent larger than the next largest house on the block." Further, the addition along the south boundary would vary "between 24 feet and 14 feet with the majority of it being over 20 feet," and sit 6 inches from the plaintiffs' property, which has windows on its north side. These changes, according to Kisiel, would reduce "light, air, and privacy" and conflict with the neighborhood's character and orderly development.

¶ 13    Loventhal, one of the plaintiffs, testified that the proposed renovations to the Khyl residence would preserve "[v]ery little" of the original house and produce "a massive, overbearing structure not in character with the rest of our street," with less landscaping than other parcels. He acknowledged that the property has a driveway but stated that, after the renovation, it would still be the only residence with parked cars and a curb cut. Loventhal stated that, with the requested variations, the residence's height and "extended footprint" would interfere with privacy and block "light, air, and views" for neighboring properties, including his own.

¶ 14    Marguerite Tompkins, a neighbor, testified that, together with other long-time residents of the neighborhood, she opposed the requested variations because "oversized homes *** threaten to fundamentally alter the quality of our neighborhood," "dwarf" older residences, and create a "canyon effect."

¶ 15    Following the trust's and plaintiffs' evidence, Alderman Thomas Tunney testified that he did not object to the requested variations. According to Alderman Tunney, the proposed renovations "will enhance the values of the neighbors in the block much more than new construction or a teardown."

¶ 16    On December 2, 2015, the Board issued a written resolution granting each variation requested by the trust.[2] The Board found that, "due to the preservation" of the "orange-rated residence" and oak tree, and the "canyon effect" caused by neighboring buildings, practical difficulties and particular hardships would occur without the variations. These conditions, according to the Board, are not generally applicable to other properties and were not created by the trust. The Board determined that the variations comport with the zoning rules' purpose and intent by preserving the character of the neighborhood. Additionally, the Board found that the variations would enhance property values and not increase congestion, detract from the public welfare or safety, or impair light or air to neighboring properties, including the plaintiffs' property. The Board also noted that the trust "will continue to own" the property and, therefore, whether it could secure a reasonable rate of return absent the variations was inapplicable.

¶ 17    On December 23, 2015, the plaintiffs filed a complaint in the circuit court for administrative review. The circuit court entered a written order affirming the Board's decision

---

[2]Three Board members approved and one dissented, but the resolution does not include a written dissent.

- 4 -

on June 28, 2017, and denied the plaintiffs' motion to reconsider on July 12, 2017. This appeal followed.[3]

¶ 18    On appeal, the plaintiffs contend that the Board erred by granting the requested variations based on evidence suggesting they were needed to preserve the Khyl residence, when, per the renovation plans, at least "90%" of the home would be demolished. Therefore, according to the plaintiffs, the Board's decision relied on "misleading testimony and reports," and "no competent evidence" demonstrated that the variations are merited.

¶ 19    When, as here, an appeal is taken to the appellate court following entry of judgment by the circuit court on administrative review, "it is the decision of the administrative agency, not the judgment of the circuit court, which is under consideration." *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010). The parties dispute the applicable standard of review. The plaintiffs claim this appeal presents a mixed question of law and fact, which is reviewed for clear error and exists when the "historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." *Id.* at 387. The trust, in contrast, argues that the plaintiffs challenge the evidence underlying the Board's findings and, therefore, raise questions of fact. We agree with the trust.

¶ 20    An agency's factual findings "are held to be *prima facie* true and correct and will not be overturned unless the agency exercised its authority in an arbitrary or capricious manner or unless its decision is against the manifest weight of the evidence." *1212 Restaurant Group, LLC v. Alexander*, 2011 IL App (1st) 100797, ¶ 42. A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly evident. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). On review, this court "does not weigh the evidence or substitute its judgment for that of the agency." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). "If the record contains evidence to support the agency's decision, it should be affirmed." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

¶ 21    We briefly set forth the regulatory framework relevant to the plaintiffs' argument on appeal. The Code's zoning ordinance controls property development within Chicago. See Chicago Municipal Code § 17-1-0100 *et seq.* (added May 26, 2004). The purpose and intent of the zoning ordinance includes, *inter alia*, promoting the general welfare; preserving the quality of life for residents and visitors; protecting the character of established residential neighborhoods; maintaining orderly and compatible development; ensuring adequate light, air, and privacy; and promoting the rehabilitation and reuse of older buildings. See Chicago Municipal Code § 17-1-0500 *et seq.* (amended Dec. 12, 2012).

¶ 22    Generally, an element of a structure that was lawfully established under previous zoning rules but does not comply with current regulations "may be altered or enlarged as long as the alteration or enlargement does not increase the extent" of the nonconformity. Chicago Municipal Code § 17-15-0403-A (amended Sept. 13, 2006). However, "[w]hen a structure with nonconforming elements is removed or intentionally destroyed, re-establishment of the nonconforming elements is prohibited." *Id.* § 17-15-0404-A. Notwithstanding, the Board may grant variations from zoning requirements. See Chicago Municipal Code § 17-13-1101-A (amended Dec. 12, 2007).

---

[3]The City of Chicago, the Board, and its members, Jonathon Swain, Sol Flores, Sheila O'Grady, Blake Sercye, and Sam Toia did not file a brief on appeal.

¶ 23     To grant a variation, the Board must find evidence demonstrating that (1) "strict compliance with the regulations and standards *** would create practical difficulties or particular hardships for the subject property" and (2) the variation "is consistent with the stated purpose and intent" of the zoning ordinance. *Id.* To determine whether difficulties or hardships exist, the Board must find evidence that (1) the property "cannot yield a reasonable return if permitted to be used only in accordance with" the zoning ordinance, (2) the difficulties or hardships "are due to unique circumstances and are not generally applicable to other similarly situated property," and (3) the variation "will not alter the essential character of the neighborhood." *Id.* § 17-13-1107-B. Additionally, the Board must consider the extent to which the evidence demonstrates whether (1) the physical condition of the property or its surroundings would cause hardship to the owner, as opposed to inconvenience, if the zoning ordinance was strictly enforced; (2) the conditions premising the petition for a variation are inapplicable to other similarly-zoned property; (3) the variation's purpose "is not based exclusively upon a desire to make more money out of the property"; (4) the difficulty or hardship "has not been created by any person presently having an interest in the property"; (5) the variation will not be detrimental to the public welfare or injurious to other property in the neighborhood; and (6) the variation "will not impair an adequate supply of light and air to adjacent property," "substantially increase" congestion on public streets, endanger the public, or "substantially diminish" neighborhood property values. *Id.* § 17-13-1107-C.

¶ 24     Based on these principles, the Board's decision to grant the variations was not against the manifest weight of the evidence. Turning first to the height and rear setback variations, the trust presented evidence that strict compliance with the zoning ordinance would cause practical difficulties and particular hardships. Murphy testified that the Khyl residence's elevated first floor reduces the height available for the upper floors, and that a variation of "a few extra feet" is needed for the third floor addition to be "habitable." Barton testified that "very large" buildings to the north and south create a "canyon-like effect" that leaves the rear yard in shadow. Additionally, he stated that the rear setback poses a hardship due to the need to create privacy and preserve an oak tree. As both witnesses explained, these considerations are not generally applicable to similarly situated property, and the renovations facilitated by the variations would preserve the building's facade and the neighborhood's character.

¶ 25     The Board's determination that the height and rear setback variations accord with the purpose of the zoning ordinance also is supported by the evidence. Barton opined that the renovations would not impede light or air, as the layout of the rear yard would preserve open space to the north, and a wall to the south would face another wall on the plaintiffs' property. Murphy stated that the design would incorporate low roof lines, preserve "the existing structure and look of the building," and not require a variation to the allowable floor area ratio. Other factors also supported the Board's determination. In particular, Khyl testified that the property was not acquired for purposes of profit, Barton stated that the buildings on either side were constructed several years before the trust obtained its interest in the property, and Alderman Tunney opined that the project would increase property values in the neighborhood.

¶ 26     As the plaintiffs observe, Kisiel and Loventhal testified that, with the renovations allowed by the height and rear setback variations, the Khyl residence would become larger and taller than neighboring houses and interfere with their light, air, and privacy. However, the plaintiffs' evidence does not render the trust's hardship evidence incompetent. Where, as here, the Board is presented with conflicting testimony and evidence exists in the record to support its decision,

- 6 -

that decision will be affirmed. See *Abrahamson*, 153 Ill. 2d at 88; see also *Weinstein v. Zoning Board of Appeals of the City of Highland Park*, 312 Ill. App. 3d 460, 466 (2000) (noting that a reviewing court "defer[s] to the Board's resolution of the factual disputes embodied in the evidence presented by each party").

¶ 27 Turning to the north and south side setbacks, we observe that the requested variations of 2.05 feet and 0.48 feet, respectively, are within the property's current nonconforming setbacks of 1.55 feet to the north and zero feet to the south. Similarly, the requested front setback variation is identical to the current nonconformity and, according to Barton, is necessary for retaining the front porch. Therefore, these variations are permissible because they will not increase the extent of the nonconformity in the front yard or either of the side yards. See Chicago Municipal Code § 17-15-0403-A (amended Sept. 13, 2006). To the extent the plaintiffs argue the renovations amount to a "90%" demolition and that the Board was "deceived" regarding the extent to which the nonconforming elements of the residence would be removed and reestablished, we disagree. The Board received the trust's application for variations and renovation plans, along with the report and testimony of the plaintiffs' expert, and is entitled to the presumption that it properly read and considered the evidence. See *Watra, Inc. v. License Appeal Comm'n*, 71 Ill. App. 3d 596, 601 (1979). As such, we will not substitute our judgment on review for that of the Board. See *Cinkus*, 228 Ill. 2d at 210.

¶ 28 The plaintiffs contend, however, that the trust "created its own practical difficulties" and would not have needed the requested variations had it been "built within" the current nonconforming setbacks. Although Kisiel testified that no hardship would result from adhering to the existing nonconformities, the trust, as we have discussed, adduced evidence regarding the need for extending certain variations. See *Weinstein*, 312 Ill. App. 3d at 465-66 (when hardship exists, the Board's decision to grant a variation is not against the manifest weight of the evidence even if the objecting party presents an alternate plan that "complie[s] with the zoning ordinances"). Where, as here, the issue "is merely one of conflicting testimony and credibility of witnesses, the administrative board's decision should be sustained." *O'Boyle v. Personnel Board*, 119 Ill. App. 3d 648, 653 (1983); see also *Rodriguez v. Bagnola*, 297 Ill. App. 3d 906, 916 (1998) (rejecting a claim that an agency's decision was against the manifest weight of the evidence where the parties presented conflicting expert testimony). The plaintiffs' position is, therefore, without merit.

¶ 29 For all the foregoing reasons, we affirm the order of the circuit court of Cook County, which affirmed the order of the Board, which reversed the decision of the zoning administrator to deny the trust's application for zoning variations.

¶ 30 Affirmed.