2024 IL App (1st) 231827-U

No. 1-23-1827

Order filed December 13, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DELPHINE BRIDGES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2018 CH 15535 |
| | ) | |
| THOMAS J. DART, in his official capacity as Sheriff of | ) | |
| Cook County, and THE COOK COUNTY SHERIFF'S | ) | |
| MERIT BOARD, | ) | Honorable |
| | ) | Thaddeus Wilson, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE C.A. WALKER delivered the judgment of the court.
Justice Hyman and Justice Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*: The Cook County Sheriff's Merit Board's finding that a correctional officer violated Sheriff's orders was not against the manifest weight of the evidence and its decision to terminate her was not arbitrary or unreasonable. The circuit court's judgment affirming the Board's decision is affirmed.

¶ 2    Plaintiff Delphine Bridges appeals from the circuit court's order affirming the decision of

Thomas J. Dart, Sheriff of Cook County (Sheriff), and the Cook County Sheriff's Merit Board

(Board) terminating her employment as a correctional officer. On appeal, Bridges contends that the Board's finding that she violated Sheriff's orders was against the manifest weight of the evidence, and her termination was arbitrary and unreasonable if premised on grounds other than excessive use of force. We affirm.

¶ 3                                 BACKGROUND

¶ 4     Bridges was appointed as a correctional officer in the Cook County Sheriff's Office (CCSO) in 1990. In August 2015, she was assigned to Tier CC in Division 11 of the Cook County Department of Corrections (CCDOC).

¶ 5     In August 2015, detainee Dale Carmer filed a detainee grievance report against Bridges, asserting the use of force, and filed a complaint with the Cook County Sheriff's Office of Professional Review (OPR). In November 2015, OPR investigator Tia Parks-Jefferson was assigned to investigate Carmer's claim against Bridges. During her investigation, Parks-Jefferson reviewed Carmer's complaint and grievance report, an incident report, telephone calls, medical records, and video recordings. She conducted interviews, which included interviews of Bridges, detainee witnesses, and correctional staff witnesses.

¶ 6     On November 29, 2016, the Sheriff filed a complaint with the Board, seeking to terminate Bridges. The Sheriff alleged that on August 24, 2015, Bridges engaged in "conduct unbecoming" when she knocked Carmer's property bag out of his hand and onto the floor. The Sheriff also alleged that she used excessive force against Carmer, asserting she struck him in the face several times, causing a right corneal abrasion injury. The Sheriff further alleged that Bridges failed to ensure that Carmer received medical attention and to properly document her use of force and his injuries. The Sheriff asserted that correctional officer Mario Robinson and correctional sergeant

Milton Bozeman were present when the incident occurred, but Bridges failed to identify them as witnesses. The Sheriff additionally alleged that Bridges gave false statements to OPR investigators.

¶ 7    The Board held a hearing on June 11, July 20, August 1, and August 2, 2018.[1] At the hearing, Parks-Jefferson testified about her investigation of the incident involving Bridges. As part of her investigation, she had reviewed videos depicting the incident, showing different angles of the jail hallway where the incident occurred. According to Parks-Jefferson, the videos corroborated most of Carmer's statement of the incident but did not capture Bridges striking Carmer. Parks-Jefferson explained that the nature of the camera was that "it pans away *** it moves, so right as the incident occurred, the camera panned away to a different location." Parks-Jefferson narrated the videos, identifying the people shown therein.

¶ 8    The videos were entered into evidence and this court has viewed them. One video (Camera 15) at 13:43:34 shows Bridges standing in the doorway between a room and a smaller hallway. Bridges slaps a bag from Carmer's hand before the camera pans away. Another video (Camera 16), showing the opposite side view of the area, depicts Bridges kicking that same bag. As this happens, Robinson enters and Carmer stands in front of them with his hands at his sides, palms up and open. Robinson attempts to handcuff Carmer with his hands in front of him. Bridges grabs Carmer's wrist, turns him around, and handcuffs him behind his back. A third officer and a detainee enter the area just before the camera pans away.

---

[1] The hearing also addressed complaints the Sheriff filed against Robinson and Bozeman, who are not parties to this appeal.

¶ 9    Parks-Jefferson testified that during her interview with Bridges, which was played at the hearing, Bridges denied striking Carmer.[2] Bridges also denied "slapping" Carmer's bag from his hands. Parks-Jefferson recounted that Robinson and Bozeman denied witnessing any use of force by Bridges against Carmer during their OPR interviews. Parks-Jefferson found that Robinson and Bozeman were not truthful to OPR in making those statements.

¶ 10    Parks-Jefferson concluded that Bridges used excessive force or unreasonable force against Carmer, finding it was "more likely than not" that Bridges had struck Carmer. She based her conclusion on Carmer's statements to OPR, the corroborating detainee witness statements, and video evidence, but noted the actual strike was not depicted in a video. Parks-Jefferson also found that Bridges failed to document or file a report regarding her use of force. Parks-Jefferson further found that Bridges had not been truthful during her OPR interview, because Bridges denied slapping the bag from Carmer's hands, which video evidence clearly depicted. Parks-Jefferson noted that Carmer did not deny he had been very disrespectful and verbally abusive to Bridges and called her a "b***." However, Parks-Jefferson determined that Bridges striking Carmer in response was not proper or reasonable and was not in compliance with the CCSO's policies and procedures.

¶ 11    On cross-examination, Parks-Jefferson testified that Carmer was medically diagnosed with a corneal abrasion after the incident, which was consistent with a strike to the face. None of the officers interviewed identified any visible injuries to Carmer's face. Parks-Jefferson determined that Carmer had not asked the officers present during the incident for medical attention.

---

[2] The audio interview of Bridges was not made a part of the record on appeal. Bridges asserts in her reply brief that the audio interview is not necessary for appeal purposes as she does not contest that, during the interview, she stated she did not "slap" the bag.

¶ 12    Detainee Patrick Twist testified as a witness to the incident involving Bridges and Carmer. While standing in line to get new shoes, Twist observed Carmer and Bridges get into a verbal altercation about whether Carmer's name was called. Bridges instructed the officer passing out shoes not to give any to Carmer. Bridges then ordered Carmer to go and pack his things, because she was sending him to "the hole." When Carmer returned with his things shortly before 1:43 p.m., he went to an area outside the gym, referred to as "the pod." Twist stood in the pod's doorway, about five feet away and had a clear view.

¶ 13    Twist observed Bridges and Carmer get into another verbal altercation when Bridges threw Carmer's belongings all over the hallway. Carmer stated, "That's some b*** s***," and Bridges replied, "Oh, hell no, you're not going to call me a b***, or something like that." Bridges then kicked Carmer's bag along the hallway, and Carmer got angry. Robinson was present in the pod where Carmer and Bridges were arguing. Bridges instructed Robinson to handcuff Carmer. After Carmer was handcuffed, Twist saw Bridges take a set of keys from her left hand and put them in her right hand and strike Carmer "at least three, four times" on the right side of his face in the cheek and eye area. Sergeant Bozeman entered the pod and "broke it up." Twist did not see Bridges, Robinson, or Bozeman try to help Carmer after the incident.

¶ 14    About an hour later, Twist saw Carmer with a "messed up" eye and blood on his cheek and around the eye area. Carmer was trying to go to medical when he saw him. Twist was not friends with Carmer but expressed to him that he would be willing to be a witness to the incident. He never saw or spoke to Carmer again. Twist was not promised anything for his testimony at the hearing nor was he threatened with harm if he or did not testify.

¶ 15    Donzell Jackson, another detainee who witnessed the incident, testified that he faced the windows into the pod from the dayroom and had a clear, unobstructed view of the incident. Jackson observed a female correctional officer punch a detainee, who was handcuffed, in the face five to six times. The officer had something in her hand that he thought looked like a ring. Jackson did not know the officer's name. Another officer stepped in and stopped her. Jackson did not know the detainee and had no contact with him after the incident. Jackson was not promised anything for his testimony at the hearing nor was he threatened with harm if he or did not testify.

¶ 16    Retired Sergeant Steve Nanos testified that on August 24, 2018, between 7:30 p.m. and 8:14 p.m., he was working at the jail and learned that Carmer was complaining of an injury. He did a video recording of Carmer's statement, Sheriff's Exhibit No. 14, which was admitted into evidence over Bridges's hearsay objection.[3] The Board admitted the video, explaining that the video would speak for itself, and Sergeant Nanos would be subject to cross-examination regarding the content of the video.

¶ 17    The video recorded statement is included in the record on appeal. In the video, Carmer states that Bridges "smacked" his bag from his hands. When Robinson had one of the handcuffs on Carmer, Bridges approached Carmer and hit the right side of his face three to four times with keys in her hand. The video displays a closeup image of Carmer's face, which shows visible red marks under his right eye, which appears swollen with a bruise forming. His lips also appear swollen and injured. Carmer admits calling Bridges a b*** but denied making any physical threats or contact.

---

[3] Carmer did not testify as he died prior to the hearing.

¶ 18    During her testimony, Bridges confirmed that when she went into OPR, she had no independent recollection of the incident, and OPR allowed her to review video, which refreshed her recollection. She agreed that during her OPR interview, she denied slapping the property bag out of Carmer's hand. She denied the same at the hearing. Bridges explained that she "grabbed" the bag out of Carmer's hand and threw it to the floor because procedure dictated that detainees could not have anything in their hands when being handcuffed. The bag landed in the open doorway, and she kicked it out of the way to secure the door.

¶ 19    Bridges characterized Carmer as compliant during handcuffing. She denied using force against Carmer after he was handcuffed. Bridges denied striking and slapping him, with or without keys. She did not recall whether she had keys on her person that day. After Carmer was handcuffed, he did not indicate he was injured, and she did not see any visible injuries, scratches, or swelling on his face. Carmer also did not indicate a need for medical attention. Bridges intended to write Carmer up for being disrespectful. However, after speaking to Bridges and her supervisor, Sergeant Jeffrey Bojanowski, Carmer apologized to Bridges, and she believed the situation was resolved. She did not have to write a use of force report because no use of force occurred.

¶ 20    On cross-examination, Bridges explained that she saw Carmer disrespecting the lieutenant distributing the new shoes. Carmer was angry, because he did not receive the correct shoe size. She told Carmer that he needed to get written up, and he continued being verbally belligerent. Bridges did have her handcuff keys on her, which were two little keys on a small ring. She did not recall dropping keys during the incident. Bridges reiterated that she never struck Carmer.

¶ 21    Robinson testified that he never saw Bridges strike, slap, or use force against Carmer. He stated filing a report was unnecessary based on what occurred that day. Robinson denied seeing

any blood on Carmer's clothing, face, arms, or hands, and did not observe any injuries on Carmer's face. In his presence, Carmer never complained to him or anyone of injuries. On cross-examination, Robinson denied that Bridges struck Carmer in the face multiple times. He explained that he was "right there" and would have seen it, "that never happened."

¶ 22 Bojanowski testified that Bridges informed him that she had a problem with a detainee and wanted to write Carmer up for "threats and abusive language." He spoke with Carmer, who said he was upset about getting the wrong shoe size, acknowledged calling an officer a name, and apologized, which Bridges accepted. Carmer did not tell him that Bridges used force on him and did not complain of any injuries. Carmer did not have injuries on his face, blood on his uniform, or visible indications suggesting he had been injured.

¶ 23 Bozeman testified that he arrived onto the scene as Carmer was being handcuffed, and later learned that Carmer was restrained because he was being disrespectful. Bozeman did not see Bridges strike Carmer, and Carmer was uninjured when Bozeman saw him. Bozeman did not think Jackson would have been able to see any altercation based on where he was located. On cross-examination, Bozeman denied that he told Bridges to stop hitting Carmer and that he jumped between them.

¶ 24 On December 4, 2018, the Board issued its written decision, dismissing Bridges from her position with the CCSO. The Board found that Bridges had been involved in an excessive use of force incident with Carmer, failed to secure medical attention for him, failed to document the incident, and made statements to OPR that were "inconsistent" with the video evidence and witness testimony. Based on the evidence presented, its assessment of the witnesses' credibility, and the weight of the evidence in the record, the Board found Bridges violated Cook County Sheriff's

Order 11.2.1.0 (response to resistance/use of force policy and notifications and reporting procedures), General Order 24.9.1.0 (reporting incidents), Sheriff's order 11.2.20.1 (conduct policy), and Article X of the Board's Rules and Regulations (conduct policy requiring officers to refrain from violating any Sheriff's orders, as well as department and Board rules and regulations).

¶ 25    Bridges filed a timely complaint for administrative review in the circuit court. The circuit court affirmed the Board's decision. Bridges timely appealed.

¶ 26                                    ANALYSIS

¶ 27    On appeal, Bridges challenges both the Board's factual findings and its decision to terminate her.

¶ 28    In administrative review cases, this court reviews the decision of the administrative agency, not the decision of the circuit court. *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 67. A sheriff's correctional officer may only be discharged of their duties for cause. 55 ILCS 5/3-7012 (West 2022). The scope of an administrative agency's decision to terminate an employee is a two-step process. *Cintron v. Dart*, 2022 IL App (1st) 201369, ¶ 19. First, we must determine whether the Board's findings of fact are against the manifest weight of the evidence. *Id*. Next, we review whether the Board's factual findings provided a sufficient basis for the Board's conclusion that cause for discharge existed, reversing only if the Board's decision was arbitrary and unreasonable, or was unrelated to the requirements for service. *Id*. ¶ 26.

¶ 29    This court holds the "findings and conclusions of the administrative agency on questions of fact" to be *prima facie* true and correct. 735 ILCS 5/3-110 (West 2022). In reviewing the agency's factual findings, we will not reweigh the evidence to make an independent determination of the facts or substitute our judgment for that of the agency. *Board of Education of City of Chicago*

*v. Illinois Education Labor Relations Board*, 2015 IL 118043, ¶ 15. If the only issue before this court is the credibility of witnesses, then this court should sustain the Board's decision. *In re Fatima A.*, 2015 IL App (1st) 133258, ¶ 58. An agency's factual findings are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Mireles v. Dart*, 2023 IL App (1st) 221090, ¶ 56. As such, there need only be some competent evidence in the record that supports the Board's decision. *Lopez*, 2018 IL App (1st) 170733, ¶ 70.

¶ 30    Among the violations, the Board found that Bridges violated Sheriff's order 11.2.1.0, which sets forth the use of force policy. Under that order, "Officers shall use an amount of force reasonable and necessary based on the totality of the circumstances to perform a lawful task, effect an arrest, overcome resistance, control a subject, or protect the officer(s) or others from injury, as specified by federal/Illinois statutes and case law." Sheriff's order 11.2.1.0(II). The order defines "excessive force" as "[t]he application of an unreasonable amount of force in a given incident based on the totality of the circumstances." Sheriff's order 11.2.1.0(V)(E).

¶ 31    We conclude the Board's finding that Bridges used excessive force against Carmer was not against the manifest weight of the evidence. Carmer reported Bridges hit him with keys in her hand, and his video recorded complaint shows injuries to his eye area and lips. Carmer received a medical diagnosis of a corneal abrasion, which Parks-Jefferson testified was consistent with strikes to the face. Twist and Jackson both testified that Bridges hit Carmer's face several times using her hand, with Twist testifying Bridges moved keys into the hand with which she hit Carmer. About an hour after the incident, Twist observed Carmer with a "messed up" eye and blood near his eye area when Carmer was seeking medical attention. Bridges striking Carmer in the face followed a verbal altercation, in which Carmer later admitted that he was being disrespectful and apologized.

All witnesses testified that Carmer never made any physical threats or movements towards Bridges or any other officer, nor did he resist arrest. Bridges confirmed that Carmer was compliant during handcuffing. Hence, there were no circumstances which warranted the use of force. See Sheriff's Orders 11.2.1.0 (VII)(G) (prohibiting use of force against compliant detainees). This evidence supports the Board's factual finding that Bridges used excessive force when she struck Carmer in the face.

¶ 32    Nevertheless, Bridges contends that the Board's finding that she used excessive force was against the manifest weight of the evidence because she, Bozeman, and Robinson all testified that she did not use unlawful force. All officers testified that they observed no injuries on Carmer, and Carmer did not request medical assistance. Bridges also asserts that the video evidence did not show her striking Carmer's face, renews her hearsay objection to the use of Carmer's video recorded statement, and theorizes that he could have sustained his injuries during the lapse in time between being handcuffed and giving his video statement. She challenges the testimonies of the two testifying detainee witnesses, Twist and Jackson, that she hit Carmer, mainly because they contradicted the other evidence and their ability to see the altercation was questionable. In challenging Twist's identification of Bridges, she asserts he "simply has to have been lying or got it wrong."

¶ 33    In essence, Bridges requests that we find the officer witnesses more credible than the detainee witnesses and weigh the evidence differently with respect to her striking Carmer. This we will not do. *Board of Education of City of Chicago*, 2015 IL 118043, ¶ 15 (in reviewing an agency's factual findings, this court will not reweigh the evidence or substitute its judgment for that of the agency). Determining the credibility of witnesses and assigning weight to the evidence is left to

the Board. *Glaser v. City of Chicago*, 2018 IL App (1st) 171987, ¶ 28. In reaching its findings that Bridges violated multiple orders, the Board explicitly stated it did so "after assessing the credibility of witnesses and the weight given by the evidence." We defer to those findings. *Id*. (sustaining the administrative board's decision where there was conflicting evidence).

¶ 34 Bridges further asserts that Carmer's video statement was admitted improperly as hearsay. However, Carmer's video statement that Bridges struck him was not dispositive where Carmer is seen on the video with injuries to his face, he was diagnosed with a corneal abrasion, and witnesses observed Bridges strike him in the face. See *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 94 (1992) (quoting *Goranson v. Department of Registration and Education*, 92 Ill. App. 3d 496, 501 (1980) (" 'where there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony in the administrative proceedings is not prejudicial error.' ")) The testimonies and video evidence taken together amply supports the Board's finding that Bridges violated Sheriff's order 11.2.1.0 when she used unlawful force against Carmer.

¶ 35 Next, Bridges contends that termination was not for just and sufficient cause. However, she concedes that if the Board's finding that she used unlawful force against Carmer was not against the manifest weight of the evidence, then she does not have an argument that her termination lacks cause. As concluded above, the Board's finding that Bridges used excessive force against Carmer was not against the manifest weight of the evidence. "It is axiomatic that violation of a single rule may constitute sufficient basis for discharge." *Cruz v. Cook County Sheriff's Merit Board*, 394 Ill. App. 3d 337, 342 (2009). Therefore, the Board did not act unreasonably or arbitrarily in terminating her for violating Sheriff's orders. Because the Board's

finding that she violated Sheriff's orders when she struck Carmer in the face is dispositive and provided cause for termination, we need not consider whether the other factual findings of the Board were against the manifest weight of the evidence or provided cause for termination.

¶ 36    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 37    Affirmed.