2025 IL App (1st) 241764
No. 1-24-1764
Opinion filed June 27, 2025

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF SCHAUMBURG | ) | |
| | ) | |
| Plaintiff-Appellant | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| v. | ) | |
| | ) | |
| THE VILLAGE OF SCHAUMBURG | ) | No. 23 CH 03031 |
| FIREFIGHTERS' PENSION FUND, THE | ) | |
| BOARD OF TRUSTEES OF THE VILLAGE | ) | |
| OF SCHAUMBURG FIREFIGHTERS' | ) | The Honorable |
| PENSION FUND, and PHILLIP RIED, | ) | Anna M. Loftus, |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices C.A. Walker and Gamrath concurred in the judgment and opinion.

**OPINION**

¶ 1     This case concerns whether a firefighter can receive a line of duty disability pension after first being awarded a retirement pension and whether the pension fund board had the authority to make that decision. According to the parties' attorneys, all of whom are experienced in this area of the law, the sequence of events before us is unusual.

¶ 2     Village of Schaumburg firefighter Phillip Ried applied for a line of duty pension, claiming noise-induced hearing loss after 32 years of service. Initially, the Board of Trustees of the

Village of Schaumburg Firefighters' Pension Fund (Board) denied Ried's application and awarded a retirement pension with backpay. On administrative review, the circuit court reversed this decision, instructing the Board to reevaluate Ried's condition based on medical expert testimony and noise exposure studies. On remand, the Board awarded Ried a line of duty disability pension.

¶ 3    The Village challenged the Board's jurisdiction to award both pensions under the Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2022)) and the Illinois Pension Code (Code) (40 ILCS 5/1-101 *et seq.* (West 2022)) and, alternatively, claimed the decision was contrary to the manifest weight of the evidence. The circuit court affirmed the Board's ruling. So do we.

¶ 4    Nothing in the Administrative Review Law or the Code precludes the Board from reversing its earlier decision and awarding a line of duty pension after awarding a retirement pension. Moreover, the Board's decision was not against the manifest weight of the evidence.

¶ 5                                   BACKGROUND

¶ 6    Phillip Ried began his career as a firefighter and paramedic with the Village of Schaumburg Fire Department in 1985. He also worked part-time as a firefighter for the McHenry Township Fire Protection District, starting in 1996. He continued both roles until 2016.

¶ 7    In 2009, Ried was diagnosed with hearing loss and began wearing hearing aids. In January 2017, he applied for a line-of-duty disability pension, claiming that the noise from his job as a Village firefighter caused his hearing loss. Ried retired in 2017 while his disability application was pending.

¶ 8    The Board conducted hearings on Ried's application from May 2018 to October 2019. It selected three physicians—Dr. Elliott Lieberman, Dr. Daniel Samo, and Dr. Steven Horwitz—

to perform independent medical examinations to assess whether Ried's hearing loss was induced by noise related to his duties as a firefighter. The physicians submitted reports and provided deposition testimony. Ried submitted a report from Dr. Peter Orris, who also testified by deposition.

¶ 9 Dr. Lieberman, an otolaryngologist, initially opined that Ried's hearing loss was age-related, although he acknowledged that Ried's work as a firefighter contributed but was not a determinative factor. After reviewing an auditory test Ried had taken in 1995, which revealed his hearing loss had started earlier than previously thought, Dr. Lieberman revised his opinion. He concluded that it was more likely Ried suffered a noise-induced hearing loss.

¶ 10 Dr. Samo, an occupational medicine physician, opined that damage to the nerves in Ried's ear and noise exposure contributed to his hearing loss. He acknowledged the difficulty of definitively attributing Ried's hearing loss solely to noise levels but recognized that firefighters generally experience significantly higher rates of hearing loss than the general population.

¶ 11 Dr. Horwitz, an otolaryngologist, prepared a report asserting that Ried's hearing loss was primarily age-related rather than caused by his firefighter activities. He suggested that Ried might have an underlying genetic or auto-immune disorder and indicated that Ried's difficulty with word discrimination could point to an issue with the acoustic nerve or inner ear unrelated to noise.

¶ 12 Ried sought treatment for his hearing loss from Dr. Orris, an occupational and environmental physician. Dr. Orris opined that Ried's hearing loss rendered him unable to perform his full duties as a firefighter. Dr. Orris stated with a reasonable degree of medical certainty that Ried's hearing loss was most likely due to exposure to loud noises at work. He said the gradual onset of symptoms suggested chronic exposure to hazardous noise, noting that

Ried had no family history of hearing problems; no prior exposure to loud noises, such as military experience; and no history of medication that could cause hearing loss.

¶ 13    Furthermore, Orris stated that firefighters face a higher risk of overexposure to noise and hearing loss from routine duties compared to their age-related peers in the general population. Ried had a long history of exposure to loud noises without protection, which particularly affected his right ear, consistent with sitting in the passenger seat of an ambulance for 14 years, often with the windows down and the sirens and horns sounding.

¶ 14    Ried testified about the tools and equipment he used throughout his career, including power saws, chain saws, and air compressors. He said he averaged 500 runs a year and that, in 1999, the protocol in the fire department was to respond to calls with lights and sirens activated.

¶ 15    After Ried testified, the Board inquired whether he wanted the Board to consider a non-duty pension as the alternative to a line of duty pension. Ried's attorney stated that he would accept a non-duty pension but requested that the Board permit Ried to take a retirement pension without prejudice to administrative review of his line of duty pension claim. The Board did not address the request.

¶ 16    Later, Ried moved to withdraw his request for non-duty disability benefits, asserting entitlement to ordinary retirement benefits and a non-duty disability pension would economically disadvantage him. The Board granted his motion.

¶ 17    The Village provided two noise exposure reports. The first report involved monitoring of sound levels at four Schaumburg fire stations in November 1999, including one where Ried worked. The report indicated that the noise exposure measurements were not significant enough to result in permanent hearing loss.

¶ 18　　In 2017, in response to Ried's application for the line-of-duty pension, the Village commissioned Aires Consulting for a sound evaluation report. The report stated that, under OSHA standards, the noise exposure Ried experienced between 2008 and 2016 was not high enough to cause sensory-neural hearing loss beyond normal aging. An environmental health consultant with Aires, Geoffrey Bacci, testified by deposition that the assessment included an individualized review of the Village's fire department, focusing on the number and types of calls Ried responded to as a firefighter. The study concluded that even factoring in significantly noisy 911 calls, Ried's noise exposure fell below OSHA standards. Bacci acknowledged that he did not interview Ried, was unaware of the length of Ried's service, and had no knowledge of the equipment Ried used or if Aires tested the equipment used before 2017.

¶ 19　　Ried entered into evidence a study by Alvin Rosenhan, who testified in person. Rosenhan, a former firefighter and mechanical engineer, taught courses in fire science and worked on engineering design modifications to improve fire truck safety. Rosenhan interviewed Ried, who provided a list of equipment he operated during his career. Rosenhan said he owns several pieces of fire equipment and apparatus similar to those Ried used as a firefighter. Based on his experience and knowledge of them, Ried had been exposed to noise levels exceeding OSHA standards, which could lead to hearing loss. Rosenhan noted that most of the equipment Ried worked on as a firefighter had been replaced and was not present when Aires Consulting conducted its study.

¶ 20　　　　　　　　　　　　　　　　Board's Decision

¶ 21　　After reviewing the evidence, the Board voted three to two to deny Ried's application for a duty disability pension. In its written decision, the Board stated that while Ried's hearing loss prevented him from performing his duties, he did not show that it resulted from "a specific

act of duty or the cumulative effects of acts of duty related to fire service." The Board found that Ried provided general testimony about the equipment he used and its approximate decibel levels but lacked sufficient proof of significant exposures, prolonged noise exposures, or symptoms following specific exposures. He also presented no evidence that he had complained about exposure to damaging noise while responding to a specific call or while performing station duties.

¶ 22        The Board assigned greater weight to the Village's 1999 and 2017 noise exposure reports, which indicated that the noise levels were not high enough to cause permanent hearing loss. The Board found credible the Village's expert, Bacci, while dismissing Ried's expert, Rosenhan, for not basing his opinion on actual or specific noise exposures.

¶ 23        The Board also rejected the opinions of Drs. Samo and Orris, stating they did not rely on specific duties where Ried was exposed to loud noise. Moreover, Dr. Orris prepared his report at Ried's behest for litigation purposes and had no special training in evaluating hearing or diagnosing ear, nose, and throat issues. Further, the Board found Dr. Orris had no basis to conclude Ried was exposed to high decibel levels, as the Village's 1999 and 2017 noise exposure reports indicated noise levels were too low to cause damage.

¶ 24        The Board gave little weight to Dr. Lieberman's testimony because he initially opined that Ried's hearing loss was unrelated to his firefighter duties before changing his opinion after seeing an auditory test performed on Ried in 1995. The Board further found that Dr. Lieberman, like Drs. Samo and Orris, did not base his opinion on a specific act of duty or exposures during cumulative acts of duty that contributed to Ried's hearing loss.

¶ 25        Instead, the Board favored Dr. Horwitz, who believed that Ried's hearing issues were likely due to an acoustic nerve or inner ear issue rather than noise exposure. The Board concluded

that "[w]here there was no evidence of any significant or prolonged exposure suffered by [Ried] from any act or acts of duty *** Dr. Horwitz explanation of the causation of [Ried's] hearing loss was the most reliable one."

¶ 26    After denying Ried's application for a line of duty pension, the Board awarded Ried a retirement pension of $6,779.00 per month with cost of living increases and retroactive back pay of $151,461.78.

¶ 27                                Ried Seeks Administrative Review

¶ 28    Ried sought administrative review of the Board's decision, leading to the circuit court reversing the Board's decision and remanding. In its order, the circuit court focused on "three main points." First, the Board applied the incorrect standard of law, disregarding the "cumulative effects of acts of duty" of the statute and instead focusing on a "specific act of duty." The court noted that the Board set forth the proper standard but, in its analysis, faulted Ried for not identifying a specific act of duty or presenting evidence showing that he sought treatment after a call.

¶ 29    Second, the Board's weighing of the medical evidence was "illogical." The circuit court noted that the Board rejected Dr. Samo's opinion because it was not based on "any specific acts of duty where [Ried] had exposure to loud noises." But the court reiterated that the Board's sole reliance on that prong of the legal standard fails because it is "not the law." The court suggested the Board reconsider Dr. Orris's testimony under the proper standard.

¶ 30    The circuit court also rejected, as "mystifying" and "fl[ying] in the face of common sense," the Board's reason for disregarding Dr. Lieberman's opinion after seeing Ried's 1995 auditory test. The court also questioned the Board's failure to share the 1995 audiogram with the other medical experts to determine whether it would alter their opinions, as well.

¶ 31      The court noted that three of the four experts found that even if noise exposure was not the primary cause, it constituted a causative factor; the Board had improperly disregarded Dr. Lieberman's testimony and given undue weight to Dr. Horwitz's testimony, given that he did not have the 1995 audiogram that caused Dr. Lieberman to change his opinion.

¶ 32      The court also found the Board's treatment of the noise exposure evidence unreasonable and arbitrary. Specifically, the court found that the Board improperly gave greater weight to the Village's 2017 noise exposure report over Rosenhan's report and testimony. The court noted that the Village's expert did not measure noise exposure during actual calls but rather reconstructed "probable noise doses that would be experienced" and "probable exposure times" on equipment Ried never used. Conversely, Rosenhan tested the type of equipment Ried used while he was a firefighter. The court stated that the distinction was significant due to the much higher noise output of older equipment compared to recent models.

¶ 33      The court determined that the Board's conclusion that the evidence did not support the Village's expert's opinion and noise exposure reports was flawed because the experts had not tested the equipment Ried used. Nor did the Board meaningfully address the Village's 1999 report.

¶ 34      The court remanded with instructions to "meaningfully review" whether Ried established cumulative acts of duty that contributed to his hearing loss. The court allowed the parties to present new evidence related to the physicians' opinions regarding Ried's 1995 audiogram, particularly from Dr. Horwitz, which led Dr. Lieberman to change his opinion. The court also directed the Board to reconsider the parties' noise exposure evidence in a meaningful way.

¶ 35                     Board Reverses on Remand

¶ 36    On remand, the Board admitted the prior administrative record as an exhibit so that two new Board trustees, who had not participated in the initial proceedings, could review the evidence and testimony.

¶ 37    The Board provided Dr. Horwitz with Ried's 1995 audiogram. Dr. Horwitz submitted a supplemental opinion, stating that the 1995 audiogram suggested the onset of noise induced hearing loss but also indicated other types of sensorineural hearing loss. He noted that Ried's audiograms from 2009 to 2016 showed a dramatic decline in both his actual hearing and word discrimination abilities but neither supported the diagnosis of noise induced hearing loss. Furthermore, although fire trucks and ambulances are loud, Ried's exposure time on a run was 6 to 8 minutes and, on returns, about 8 to 9 minutes. This exposure duration came well within OSHA standards, even without the use of ear protection.

¶ 38    This time, the Board awarded Ried a line-of-duty pension. A majority found that considering the totality of the medical opinions and Ried's testimony of noise induced hearing loss from 32 years as a firefighter, his duties were a "contributing causative factor in [Ried's] disabling hearing loss condition" and Ried had presented sufficient evidence "of cumulative effects of on-duty exposures to demonstrate a nexus between acts of duty and his hearing loss."

¶ 39    After the Board announced its decision, the Village's attorney asked if the Board had the authority to grant Ried a line-of-duty pension, given that Ried already received a retirement pension. The Board stated the issue was not before it, but the Village could file a formal motion.

¶ 40    The Village moved to reconsider, arguing the Board had (i) no authority under the Code to award an "interim" retirement pension while a line of duty pension was being appealed in circuit court and (ii) no jurisdiction under the Administrative Review Law to reconsider its retirement pension award. The Board decided that it lacked jurisdiction to consider the motion.

¶ 41                                    Village Seeks Administrative Review

¶ 42        The Village filed a complaint for administrative review of the Board's decision, claiming the Board had no jurisdiction or authority to award a line of duty pension after (i) awarding Ried a full retirement pension in a final administrative decision and (ii) Ried receiving the monthly pension payments for over two years, along with his full back pay and cost of living increases. Alternatively, the Village argued that if the Board had the authority, reversing its original decision without new testimony or evidence would be unreasonable, arbitrary, and against the manifest weight of the evidence.

¶ 43        In a thorough and cogent order, the circuit court affirmed the Board's decision. As to jurisdiction, the court found that because Ried filed his administrative review within 35 days of the final administrative decision, the court had jurisdiction to remand. The Board then had jurisdiction to enter a final decision awarding a duty disability pension.

¶ 44        As to the Board's authority to award a line of duty pension after granting a retirement pension, the court found no provision that prevented the Board from doing so or Ried from choosing which award he would prefer to receive if awarded both. The court determined that nothing in the Act required the applicant to reject a retirement award to seek administrative review of a decision denying a duty disability pension.

¶ 45        As to the Board's decision awarding Ried a line of duty pension, the court held that it was not against the manifest weight of the evidence. The Board "used the proper standard in looking at this application," and evidence in the record demonstrated "that the noise levels experienced by Mr. Ried reached the level that can cause damage, as well as the medical evidence that the board relies on to award duty disability benefits."

¶ 46                                                ANALYSIS

¶ 47  The Village contends (i) the Board did not have jurisdiction under the Administrative Review Law to award a line-of duty pension after awarding a regular retirement pension with backpay, (ii) the Board did not have authority under the Code to award a line of duty pension, and (iii) the Board's decision to award a line of duty pension was against the manifest weight of the evidence.

¶ 48               Standard of Review

¶ 49  The Administrative Review Law governs appeals from administrative hearings. See 735 ILCS 5/3-101 to 3-113 (West 2022). We review the Board's decision, not the circuit court's. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). The standard of review varies depending on whether the question involves facts, law, or a mix of both. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). A Board's jurisdiction and authority to award a line of duty pension presents legal questions that we review *de novo*. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998).

¶ 50  Whether hearing loss is work-related constitutes a factual determination. We review findings of fact under the manifest weight of the evidence standard. *Glaser v. City of Chicago*, 2018 IL App (1st) 171987, ¶ 20. A finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Scepurek v. Board of Trustees of the Northbrook Firefighters' Pension Fund*, 2014 IL App (1st) 131066, ¶ 17. We deem the Board's factual findings *prima facie* true and correct. *Glaser*, 2018 IL App (1st) 171987, ¶ 20. That an opposite conclusion may be reasonable or that we might have ruled differently does not justify reversing administrative findings. *Kelly v. Retirement Board of the Policemen's Annuity & Benefit Fund*

*of Chicago*, 2022 IL App (1st) 210483, ¶ 30. Rather, we will affirm the Board's decision when the evidence in the record supports it. *Id.*

¶ 51                     Preservation of Jurisdiction Issue

¶ 52        Before addressing the jurisdiction issue, we consider Ried's argument that the Village forfeited the issue on appeal by failing to raise it before the Board.

¶ 53        Unless an argument, issue, or defense is "presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time" on administrative review. *Cinkus*, 228 Ill. 2d at 212. This rule is premised on "the demands of orderly procedure and the justice of holding a party to the results of his or her conduct where to do otherwise would surprise the opponent and deprive the opponent of an opportunity to contest an issue in the tribunal that is supposed to decide it." *Id.* at 213.

¶ 54        Ried contends the Village knew since January 2020 that he was receiving a retirement pension and sat on the argument for years, procedurally forfeiting the issue. We disagree.

¶ 55        As noted, the rule of procedural default specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts. *Id.* at 212-13. The Village raised the issue after the Board voted to award Ried a duty disability pension. The Village's attorney asked, "Has the Board considered whether it has the authority to grant a line-of-duty disability now that he's already been receiving a regular [retirement] pension?" The Board stated that the issue was not before it and suggested that the Village file a motion. The Village moved to reconsider, raising the issue before the Board and thereby preserving it for appeal.

¶ 56                     Jurisdiction to Award Line of Duty Pension

¶ 57    Turning to the merits, the Village contends that 35 days after the Board entered its decision awarding Ried a retirement pension, the administrative proceeding was terminated under section 3-103 of the Administrative Review Law (735 ILCS 5/3-103 (West 2022)), and the Board lost jurisdiction of the case.

¶ 58    An "administrative decision" or "decision" is "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." *Id.* § 3-101. Section 3-103 of the Administrative Review Law provides that "Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party ***." *Id.* § 3-103. The 35-day time limit is jurisdictional. See *Masterson v. Village of Glenview Police Pension Board*, 2022 IL App (1st) 220307 (35-day time limit, under Administrative Review Law, for initiating review of final administrative decision by police pension board is jurisdictional and board lacks authority to reconsider final decisions beyond expiration of 35 days). Thus, to the extent the Village argues the Board lacks jurisdiction to reconsider, we agree. That was a final decision by the Board, and neither the Village nor Ried contested it.

¶ 59    The Village also contends the Board did not have jurisdiction to award Ried a line-of-duty pension once the retirement pension became final after 35 days. Not so.

¶ 60    The line of duty pension involved a different "decision," and Ried had a right to challenge it. Section 4-139 of the Code (40 ILCS 5/4-139 (West 2022)) provides for administrative review of final decisions. The Board initially denied Ried's application for a line of duty pension, and Ried timely sought administrative review.

¶ 61    Section 3-111(a)(6) of the Administrative Review Law permits the circuit court "where a hearing has been held by the agency, to reverse and remand the decision in whole or in part, and *** state the questions requiring further hearing or proceedings and to give such other instructions as may be proper." 735 ILCS 5/3-111(a)(6) (West 2022). The circuit court reversed the Board's decision and remanded with instructions to consider whether Ried's disability resulted from the "cumulative effects of acts of duty" and to reconsider the noise exposure evidence and expert witness testimony. The Board followed the circuit court's order, reviewed the evidence, and reversed its earlier decision. The Village cites no statute or cases (and we found none) to support its argument for stripping the Board of jurisdiction over its line of duty disability decision.

¶ 62                        Authority to Award Line of Duty Pension

¶ 63    The Village next contends the Board lacked authority to award a line of duty pension.

¶ 64    The Board derives its authority from the Code. Under section 4-125 of the Code, the Board has authority "[t]o hear and decide all applications for pensions and other benefits." 40 ILCS 5/4-125 (West 2022). The Code permits the Board to award a retirement pension (*id.* § 4-109), a line of duty disability pension (*id.* § 4-110), a non-duty disability pension (*id.* § 4-111), and an occupational disease disability pension (*id.* § 4-110.1).

¶ 65    The Village contends that the Code does not permit the Board to award an "interim" retirement award or convert a retirement pension into a disability pension. For support, the Village relies on an advisory opinion from the Illinois Department of Insurance (IDOI), the agency tasked with administering and enforcing the Code. In 2018, the Northbrook Firefighters' Pension Fund Board requested an advisory opinion from the IDOI on its authority to award an interim retirement pension during the pendency of a firefighter's disability pension

application. The IDOI advisory opinion stated that, under section 4-113 of the Code, a disability pension can be converted to a retirement pension, "but the Code does not provide for conversion from a retirement pension to a disability pension. [Citation.] And, most importantly, there is no provision in the Code for an interim retirement pension."

¶ 66    The Village argues, based on the IDOI opinion, that the Board's decision to award Ried either a regular or an interim retirement pension and later convert it to a line-of-duty pension is void because the Code authorizes neither. The facts were significantly different, however. There, the Pension Board had not yet determined whether the firefighter was entitled to a duty disability pension and inquired about its authority to award a retirement pension in the interim. Here, the Board did not award a retirement pension until after it had denied Ried a duty disability pension and the proceedings had concluded. Thus, no "interim" award awaited the outcome of the Board's decision. Ried qualified for the retirement pension and the Board had the authority to issue it. Nothing in the Code prohibited the Board from awarding a retirement pension once it had decided that Ried was not entitled to a line of duty pension.

¶ 67    Nor did the Code require Ried to reject a retirement pension to seek administrative review of his duty disability denial. Ried retained the right to appeal the denial of duty disability benefits to the Circuit Court. Indeed, if we adopt the Village's argument, the Board could deprive an applicant of the right to appeal a denial of a line of duty disability pension by awarding a retirement pension. Or the applicant would have to forgo the retirement benefit in the hopes of prevailing on administrative review or accept a non-duty disability benefit, which provides less money.

¶ 68    All parties, as well as this court, agree that Ried is not entitled to two pension awards. He must choose which to accept. If he opts for the duty disability pension, the Board may likely

be able to "claw back" the retirement benefits he has received. (During oral argument, the Board's attorney stated the Board had already addressed this issue, and it is not before us.) But absent a prohibition in the Code, the Board did not exceed its authority by awarding Ried a line of duty pension after having already awarded a retirement pension.

¶ 69                                     Manifest Weight of the Evidence

¶ 70        The Village contends the Board's decision to award Ried a line-of-duty pension was against the manifest weight of the evidence.

¶ 71        Section 4-110 of the Code states that a firefighter may receive a line-of-duty disability pension if he or she "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found *** to be physically or mentally permanently disabled for service in the fire department." 40 ILCS 5/4-110 (West 2022). A firefighter's duties need not be the sole or primary cause of his or her disability; rather, it is sufficient that the duty-related activities were a contributing or exacerbating factor. See *Luchesi v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago*, 333 Ill. App. 3d 543, 550 (2002). That an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversing administrative findings. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992); *Marconi*, 225 Ill. 2d at 534 (decision should be affirmed if record contains evidence supporting agency's ruling).

¶ 72        The Village asserts the Board heard no new or competent evidence to support its earlier decision denying a line of duty pension. Regarding Dr. Horwitz, the Village claims that he did not change his opinion; his supplemental opinion states that the 1995 audiogram "is NOT diagnostic of noise induced hearing loss." Given that the Board relied on Dr. Horwitz's

opinion, which remained unchanged, the Village argues that the Board's decision should remain unchanged. The Village also suggests the Board adopted the circuit court's decision as its own, and the circuit court exceeded its authority by reweighing the evidence and making factual determinations. See *Abrahamson*, 153 Ill. 2d at 88 (court's function is not to reweigh evidence or independently determine facts; court ascertains whether agency's findings and decision are against manifest weight of evidence).

¶ 73    The circuit court did not reweigh the evidence. Section 3-111(a)(6) of the Administrative Review Law provides that "where a hearing has been held by the agency, [the circuit court has power] to reverse and remand the decision in whole or in part, and, in that case, to state the questions requiring further hearing or proceedings and to give such other instructions as may be proper." 735 ILCS 5/3-111(a)(6) (West 2022). The circuit court found that the Board applied the wrong standard on whether Ried's hearing loss was due to the cumulative effects of acts of duty and erred by not providing the medical experts with Ried's 1995 audiogram.

¶ 74    The Board contends that although Dr. Horwitz did not change his ultimate opinion, his supplemental opinion said the results of the 1995 audiogram "could be suggestive of noise-induced hearing loss, as well as other types of sensorineural hearing loss." The Board found this acknowledgment significant, considering the opinions of three medical experts who opined that Ried's firefighting duties were a contributing or causative factor in his hearing loss. The Board further notes that three of the four other medical experts opined that noise exposure was a causative factor in Ried's hearing loss.

¶ 75    The Board reconsidered the noise exposure reports as instructed by the circuit court, pointing out that Rosenhan, who testified for Ried, stated that Ried's equipment far exceeded OSHA's exposure limit. Conversely, the Village's expert, Bacci, claimed that Ried's exposure

likely did not approach the OSHA limit but was unaware of Ried's years of service, the equipment he used, or whether the equipment tested had been used when Ried was a firefighter. The circuit court acted well within its authority in instructing the Board to reconsider the evidence under the proper legal standard, and the Board complied.

¶ 76    The record supports the Board's conclusion that Ried suffered from a hearing loss disability and his duty-related activities were a contributing or exacerbating factor. We do not reweigh the evidence or independently assess the facts. *Hoffman v. Orland Firefighters' Pension Board*, 2012 IL App (1st) 112120, ¶ 18.

¶ 77    Thus, the Board's decision to grant Ried a line of duty disability pension was not against the manifest weight of the evidence. *Marconi*, 225 Ill. 2d at 534.

¶ 78    Affirmed.

---

### *Village of Schaumburg v. Village of Schaumburg Firefighters' Pension Fund*, **2025 IL App (1st) 241764**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-CH-03031; the Hon. Anna M. Loftus, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Yvette A. Heintzelman and Amelia S. Newton, of Clark Hill, PLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Thomas S. Radja Jr., of Radja Collins Law, of Downers Grove, for appellee Village of Schaumburg Firefighters' Pension Fund and the Board of Trustees of the Village of Schaumburg Firefighters' Pension Fund. |
| | Scott P. Moran, of Anesi Ozmon, Ltd., of Chicago, for other appellee. |

---